79 F.2d 613 (1935)
In re POTTASCH BROS. CO., Inc.
CENTRAL ILLINOIS CO.
v.
IRVING TRUST CO.
No. 91.
Circuit Court of Appeals, Second Circuit.
November 12, 1935.
*614 Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Addison S. Pratt and Delbert M. Tibbetts, both of New York City, of counsel), for appellant.
Earl D. Deremer, of New York City (R. John Urevich, of New York City, on the brief), for appellee.
Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.
L. HAND, Circuit Judge.
The trustee appeals from an order which granted a petition in reclamation of the assignee of a creditor, in the following circumstances: At petition filed the Central Trust Company of Illinois was the largest creditor of the bankrupt; with the Chase Bank it held over ninety per cent. of the claims. It had security of various sorts not important here, except that as collateral to a note of $12,500 there had been assigned to it claims against the United States in large amounts, for the repayment of customs duties erroneously collected. Neither the bankrupt, nor the bank appears to have known that the pledge of these claims was invalid because of Rev. St. § 3477 (31 USCA § 203 and note). During the administration of the estate the trustee negotiated a settlement with the two banks, by which it agreed to assign to them all the accounts receivable and notes receivable on the bankrupt's books, and all claims which it had against other bankrupt estates, in consideration of which they were to withdraw their claims. The first of the two letters of the Central Trust Company in this negotiation  that of January 27, 1932  does not suggest that title to any collateral already held by the banks should be confirmed in them; but the second  that of March 15th  did so; it asked that "title to all items assigned to them as collateral would be confirmed in them." These are the only evidence of the negotiations in the record; they were followed by a petition to the referee, drawn by the trustee, praying leave under section 27a of the Bankruptcy Act (11 USCA § 50) to make the proposed settlement. It recited the reasons why this was desirable, described the consideration going to the banks as an assignment of the "accounts receivable, notes receivable and claims in bankruptcy," and concluded that "this estate shall have no further claim to any collateral held or claimed to be held by them," i. e., the banks. The prayer for relief was in the same terms. At the creditors' meeting held to consider the proposal the banks' counsel stated this term of the settlement as "confirming * * * all title to all collateral assigned to it by Pottasch Brothers, Inc., or delivered to it by Pottasch Brothers, Inc." The referee said that he understood that "the collateral in the hands of the two banks at the present time shall be deemed to be properly held by them." He approved the settlement, and the trustee drew an order authorizing it to assign the accounts, notes and claims in bankruptcy, but concluding that upon withdrawal of the claims the trustee should "have no further claim to any collateral pledged and now held" by them "as security for their claims." This order the referee signed on April 15, 1932, the accounts, etc., were assigned, the estate was *615 thereafter closed and the trustee discharged.
Nobody had thought about the claims for the refund of customs duties, and the trustee's attorney did not even know of them, although they were mentioned in the claim as filed. Most of them were eventually dismissed, but in due course some were allowed to the extent of about $11,000. Thereupon the estate was reopened in the autumn of 1934, and the trustee was reappointed so that the recovery might be distributed. The assignee of the Central Trust Company, the present petitioner, intervened claiming the award by virtue of the settlement. It will, however, be noted that the referee's order had not followed the terms of the prayer in the petition; it omitted the words, "or claimed to be held," out of the phrase, "held or claimed to be held"; and the trustee insisted that it did not therefore cover the award, whose pledge had been invalid under Rev. St. § 3477 (31 USCA § 203 and note). The bank had never "held" the claim for refund it asserted, and, having no title, there was nothing to confirm. Thereupon the petitioner asked the referee to amend the order so that it should conform to the petition; but the referee refused to do so, holding that he was without power to vacate or modify any of his orders. Since he construed the word, "held," as comprising only collateral which had been actually transferred, he thereupon dismissed the petition, although he found in fact that the purpose of the parties had been that the order should follow the petition. On appeal the District Judge reversed the referee not because he differed from him in his holding that the order was not enough as it stood, but because, though he assumed without deciding that a referee might not amend his orders in substance, he thought that the amendment in question was merely to make the order speak the original true intent of the court, and that all courts had power to do as much at any time. He therefore amended the order to read, "held or claimed to be held," and directed the trustee to pay the award to the petitioner. The trustee thereupon appealed to this court.
If the order be amended to read as the bank wishes, it is not subject to Rev. St. § 3477, for it then transfers the claims ex proprio vigore. Western Pacific R. Co. v. United States, 268 U. S. 271, 45 S. Ct. 503, 69 L. Ed. 951. True, it does not undertake formally to pass title to the collateral, but only to bar the estate from any claim to it, and it might be argued under the dictum in St. Paul & D. R. Co. v. United States, 112 U. S. 733, 5 S. Ct. 366, 28 L. Ed. 861, that for this reason as the pledge was the only effective act of transfer, and as it was obnoxious to Rev. St. § 3477, the order, as mere foreclosure of the equity, was not a transfer by operation of law. It is perhaps a little doubtful whether anything remains of the dictum in St. Paul & D. R. Co. v. United States, supra, after Western Pac. R. Co. v. United States, supra, but we need not answer that somewhat embarrassing question; for it is plain that the phrase, "held or claimed to be held," must have been meant to cover not only valid but invalid pledges, and to assure to the banks all the collateral to which they asserted any claim regardless of their title. In no other way can any effect be given to the words, "or claimed to be held"; for "held" alone certainly covered all collateral validly pledged; indeed it might even be argued that it was enough to include all to which the banks laid claim. Furthermore, if "claimed to be held" was intended to assure to the bank collateral whose title had not been transferred, it could do so only by the fiat of the court, and that would be a transfer wholly "by operation of law" and therefore valid, notwithstanding Rev. St. § 3477. Thus the only other questions are whether the order (1) should be, and (2) could be, so amended.
As to the first, there cannot be any fair doubt that as entered it did not express the settlement actually intended by the parties; the referee thought so, and so did the judge. The confirmation of the banks' title, when it first appeared as an element in the negotiation in the letter of March fifteenth, might on its face seem equivocal; "all items assigned to them," might be fairly construed as "items validly assigned to them." But the bank certainly intended by the phrase to include the claims for refund, because it had no idea that they were not "validly assigned." In any case the parties construed the settlement more broadly; certainly the trustee did, else it could not have drawn the petition in the language which it chose; the verbal opposition must have been deliberate. It makes not the slightest difference whether *616 or not its attorney knew of the claims for refund; the language and the purpose was perfectly general. There was not even a unilateral mistake, for it does not appear that the trustee would not have used the same words, if its attorney had known of the claims for refund. They were wholly speculative, and, for all we know, considered valueless. Besides, though the trustee had been mistaken, the bank was not; it remembered the collateral and expected to include it because, as we have said, it thought the pledge valid. It is clear therefore that the order should be amended, unless the referee had no power to amend it; it did not embody the parties' intent. It did not embody the referee's intent either; but on that we do not rest. The only question therefore is whether the referee had power to amend it.
There is indeed considerable authority for the opinion that a referee has no such power. So far as we can find, it had its origin in Judge McPherson's ruling in Re Greek Manufacturing Co. (D. C. 1908) 164 F. 211, and arose from what with deference seems to us a mistaken understanding of General Order 27 (11 USCA following section 53). That order governs petitions to the District Court to review orders of referees, and it is indeed amply well settled that they may not be reviewed in any other way. Many of the authorities relied upon in support of the doctrine merely decide as much, and they are altogether beside the point, unless one assumes that the reconsideration by a court of its own judgments or decrees is a review within the intent of the General Order, which is the very question at issue. Nobody to-day would think of an order of the court itself vacating a judgment as an appeal, whatever were the archaic notions about it; and the General Order only lays down the procedure upon appeals to the District Court. This is apparent from the very form of the order which speaks of "review by the judge"; it fills a gap in the statute otherwise unprovided for, except as may be implied from section 39a (5), Bankr. Act (11 USCA § 67 (a) (5). On the other hand, if a referee is a court at all, there is no warrant for saying because an appeal lies from his orders, that he has not the ancient and elementary power to reconsider those orders, nor the faintest reason why he should not do so. That power is of course limited in duration when there are terms of court, but in bankruptcy there are none. In re Burr Mfg. & Supply Co., 217 F. 16 (C. C. A. 2); Hume v. Myers, 242 F. 827, 829 (C. C. A. 4). As to a referee's being a court, not only "may" he be the "court of bankruptcy," section 1a (7), 11 USCA § 1 (7), but under section 38a, 11 USCA § 66, he is affirmatively "invested * * * with jurisdiction to * * * perform such part of the duties * * * as are by this act [title] conferred on courts of bankruptcy and as shall be prescribed by rules or orders of the courts of bankruptcy of their respective districts." Rule 20 of the Bankruptcy Rules for the Southern District of New York is such a "rule or order"; it declares that "the referee designated shall, after adjudication, have jurisdiction of all proceedings." All applications must be made to him, and the court is forbidden to hear any motion in the cause thereafter. General Order 12 (1), 11 USCA following section 53 is to the same effect; after an order of reference "all the proceedings * * * shall be had before the referee." Thus it seems to us a perversion of General Order 27 (11 USCA following section 53) to seize upon the mere chance that appeals from referees were called "reviews," and use it to strip them of powers so common and so necessary to the reasonable exercise of their jurisdiction. Why it is desirable that their orders, ruat coelum, should be as immutable as the Twelve Tables, once the ink is dry, we cannot understand.
The authorities which support such a conclusion are not numerous, and they merely repeat the original reasoning. Judge McPherson in Re Marks (D. C.) 171 F. 281, followed his earlier ruling, but that adds little. In International Agricultural Corporation v. Cary (C. C. A.) 240 F. 101, the Sixth circuit did indeed give the doctrine its obiter approval, but it was an afterthought, added to a decision which had dealt with the merits of the original order that a later referee had undertaken to vacate. Except for this the only decisions of Circuit Courts of Appeal which have so decided are in the Ninth circuit. In re Faerstein, 58 F.(2d) 942, and Patents Process, Inc., v. Durst, 69 F. (2d) 283. The first repeated the reasoning of Judge McPherson and cited some other decisions, which decided only that appeals from orders of a referee must be under General Order 27, which, as we have said, is irrelevant. The second case contained the merest dictum. We do not forget Kelly v. National City Bank of New *617 York, 71 F.(2d) 689 (C. C. A. 3), an appeal by a bankrupt from an order reversing an order of a referee which vacated an earlier order for examination under section 21a (11 USCA § 44 (a). In the District Court (In re Kelly, 7 F. Supp. 379), Judge Avis did indeed follow In re Greek Manufacturing Co., supra, 164 F. 211, but the Circuit Court of Appeals did not so dispose of the appeal. They treated it as though the bankrupt were appealing from the order for his examination and decided it on the merits. Fazakerly v. Kahn's Sons Co. (C. C. A.) 75 F.(2d) 110, is at best an exception to the doctrine, and approves it no further than so far as it does not disapprove it. In re Renshaw's Sons, 3 F.(2d) 75 (D. C. S. D. Ill.), really concerns the right to appeal, which had not been taken in time; so far as it touched the question, it was to decide that the referee's oral statement that he would not change his opinion was not an appealable order. In re Dixie Canden Oil Co., Ltd. (D. C.) 3 F. Supp. 534, being in the Ninth circuit, necessarily followed In re Faerstein, supra, 58 F.(2d) 942, and adds nothing to it. What we said in Re Crosby Stores, Inc., 65 F.(2d) 360, 362, was indeed obiter, but upon deliberation we remain of that opinion. We hold that a referee has the same power over his orders as the District Judge has over his. Hence it is not necessary to consider whether there is an exception to the supposititious doctrine by which a referee may correct his orders for misprision of the clerk, as a court may correct its judgment after the expiration of the term.
Order affirmed.