**In re ROSENBAUM GRAIN CORPORATION.**

**MERCANTILE TRADING CO. et al. v. ROSENBAUM GRAIN CORPORATION et al.**

**No. 5611.**

Circuit Court of Appeals, Seventh Circuit.

April 13, 1936.

Francis X. Busch, Orville J. Taylor, and John S. Miller, all of Chicago, Ill., for appellants Mercantile Trading Co. et al.

Murry Nelson, of Chicago, Ill., for appellee creditors' committee.

Luther D. Swanstrom, George E. Q. Johnson, Walter E. Wiles, and Samuel G. Clawson, all of Chicago, Ill., for appellees Paul Darrow et al.

Weston B. Grimes, J. H. Colman, and Junell, Driscoll, Fletcher, Dorsey & Barker, all of Minneapolis, Minn., for appellee Cargill Elevator Co.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This is an appeal from an order in a 77B proceeding authorizing the transfer to Cargill Elevator Company for $70,000 (and assumption of rent liability) of a sixty day leasehold interest in a large grain elevator, which was an asset in the debtor's estate.

The Facts: The Rosenbaum Corporation, an Illinois company, filed a voluntary petition under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), April 23, 1935. Its petition stated that it bought and sold grain, having offices in twenty-one cities; that it owned three subsidiaries—Chicago Elevator Properties (a subsidiary debtor); Turner-Hudnut Grain Company, and Chesapeake Export Company (a subsidiary debtor); that its assets are $6,000,000 and liabilities, $3,970,000. It alleged its solvency. The Chicago. Ele-
vator Company has thirty elevators valued at $4,500,000 against which there exists a mortgage of $800,000; it has other assets of $325,000 and liabilities of $50,000; the Turner Company operates the Chicago Elevator Company's elevators and has net worth of $45,000; the Chesapeake Export Company has a net worth of $120,000. The District Court approved the debtor's petition and appointed a temporary trustee.

Among debtor's assets was a leasehold interest in an elevator in South Chicago having 10,000,000 bushel capacity, leased from the Chicago and Northwestern Railroad, July 1, 1932, for five years. This is the subject matter of the order appealed from. The lessor served the trustees of the debtor with a ninety day notice of termination expiring September 24, 1935. The Cargill Elevator Company was negotiating for a lease from the Railroad and sent a proposal to the debtor for the purchase of its interest in the lease and its grain in the elevator, or the storage thereof. The trustees petitioned the court, July 11, 1935, for authority to make the contract. The court ordered an open hearing on the Cargill petition. The evidence on this hearing is not in the record.

On July 22, the District Court entered the order complained of, finding in addition to the facts above stated that the trustees were operating the elevator in question at a loss; that the elevator was not then approved by the Chicago Board of Trade as a proper elevator for delivery of grain not already in the elevator; that the elevator is particularly valuable in the grain trade during the crop movement which would then shortly commence and extend for a few months only and the lease must be disposed of immediately or else its entire value be lost to debtor; that the Cargill Company's offer was reasonable and its acceptance to the best interest of the debtor. Much of the grain in the elevator is pledged to the Chase National Bank and the First National Bank to secure loans to debtor, and to First National Bank to secure loans to trustees, and the pledged grain can be sold to Cargill and the proceeds paid to the banks. The court ordered the acceptance of the offer, the proceeds of the pledged grain to be paid the pledgees.

On the day the above order was entered the Cargill Company wrote the trustees making a new proposal to the above effect, which proposal was incorporated in

the order appealed from, and notifying the trustees that all other proposals had expired, but stating that if the proposal for sale of the lease for $70,000 and rental be accepted by the District Court by that date and there be no appeals or delays which should prevent the consummation of the transaction, the amount would be paid August 5, provided it took possession as of July 27, 1935, under lease from the Railroad. Special provisions were made as to treatment of grain in the elevator. The price of the grain was to be established by so-called arbitrators, one to be selected by Cargill and one by the court, the arbitration to be as of August 20, but if the price on that day did not fully reflect the proper price the arbitrators were to take the price of the first day determined to reflect the proper price.

Appellants are substantial stockholders whose stock is pledged to secure some of their notes aggregating more than $275,000 held by the trustees, which notes were given in settlement of claims of the trustees against them. Appellants were given leave by the District Court to file their appearances. Cargill Company was not a party to the proceedings in the District Court.

The debtor filed a plan of reorganization, a creditors' committee filed a plan, and a stockholders' committee also filed suggestions for a plan.

It is appellants' contention on this appeal that: (1) The court could not order a disposal of assets (lease interest or grain) prior to an adjudication of insolvency of the debtor, nor dispose of the grains as provided in Cargill's proposal. (2) The District Court could not order a sale to one not a party, conditioned that there be no appeal. (3) The trustees are not assignees of debtor's lease but only may elect to accept or reject the lease (and cannot cancel it) and their appointment does not vest the court with jurisdiction of the leasehold. (4) The lease had not been duly canceled by the lessor, as there was no proper notice of termination. (5) The court abused its discretion, if it had discretion, in entering the order appealed from. (6) The court had no power to submit to arbitration the price to be paid for the grain, such action not being in accord with the Bankruptcy Act or Bankruptcy Rules.

The Cargill Company moved to dismiss appellants' appeal (as did appellees) on the ground that they are not such parties as may appeal not having intervened but merely filed appearances, relying for support of this contention on this court's decision in, In re Milwaukee & Sawyer Building Corporation, 79 F.(2d) 478. It also discusses all other participation by appellants in the proceedings, other than their appearance, but believes such additional participation was not equivalent to intervention by appellants. It also argues that appellants did not object in the District Court on any of the grounds now urged and therefore such objections are not available to them now. It argues that if the condition in the proposal against appeal be invalid it does not necessitate reversal of the order. But it also contends for the construction of the appeal provision (that *"no appeals or other delays* shall prevent the expeditious consummation of the transaction * * *"), which does not forbid appeal, but merely does not postpone the carrying out of the transaction pending determination of appeal and that even if the provision of appeal be illegal the entire contract will not fall. It also points out that error assigned on appeal must be prejudicial. Other contentions presented by Cargill are similar to those presented by appellees.

The questions presented on this appeal are so many and the briefs so numerous that an elaboration of our views in support of the conclusions reached will be for the most part avoided. We will content ourselves with stating our conclusions.

(1) The term "perishable commodity" is a relative term used ordinarily by courts and lawyers to describe a product, like fruit or fresh vegetables, which quickly deteriorates in quality and value. The reasons back of the rule, which support judicial orders directing their immediate sale, apply to the disposition of other property of an involved company. The equity court's action must be governed by a desire to realize the largest amount possible from the assets. A lease of a large grain warehouse with less than three months to run, falls within the class commonly, though somewhat loosely, called a perishable commodity. The same reason necessitates the closing out of grain (cash or future) in a warehouse, the lease upon which is about to expire.

A lease of a large grain warehouse which is about to expire and whose value is dependent upon its use during a partic-

394

ular period of the year then about to begin, may by a court of bankruptcy in a 77B proceeding be treated as perishable property and disposed of as such. Hill v. Douglas (C.C.A.) 78 F.(2d) 851; In re Pedlow (C.C.A.) 209 F. 841. In such a case the court of bankruptcy has the jurisdiction of an equity court. Section 77B (a), 11 U.S.C.A. § 207(a).

█ (2) The evidence strongly supports the finding that the transfer of the lease of the warehouse and the sale of the grain was advantageous to the creditors of the debtor. No creditor has objected to the order and a considerable number representing a substantial percentage of all debts have approved of the disposition made by the court. Where discretion is involved and is to be exercised, creditors are entitled to first consideration by the court of bankruptcy.

█ (3) The order above mentioned does not contain a provision against appeal, but properly construed, gave to the lessee and purchaser of the grain the right to proceed with the sale and to take possession of the warehouse during the fruitful period of the year, notwithstanding an appeal was taken. A reasonable construction of "no appeals or other delays shall prevent the expeditious consummation of the transaction," in view of the surrounding facts and circumstances, is not that the right to appeal was denied, but that the taking of an appeal should not hinder the carrying out of the agreement. Time was most certainly the essence of this contract and if an appeal blocked further steps which led to possession, the cash price and other advantages of the transfer would be lost.

█ (4) The right of a stockholder to be heard is defined and limited by section 77B (c)(11), 11 U.S.C.A. § 207(c)(11), to the questions of the permanent appointment of trustees, or the proposed confirmation of a plan of reorganization "and upon filing a petition for leave to intervene, on such other questions arising in the proceeding as the judge shall determine." Appellants filed their appearances but did not intervene. Under the rule announced in, In re Milwaukee & Sawyer Building Corporation, 79 F.(2d) 478 (C.C.A.7), the stockholders were not parties who could properly appeal without showing that they had been permitted to intervene.

[6] (5) Harmless and non-prejudicial error in a decree of the District Court is not ground for reversal by this court. 28 U. S.C.A. § 391. Our conclusion is that the stockholders were not prejudiced by the District Court's order. In fact it was to the advantage of the debtor as well as to its creditors. If there be a conflict between stockholder's and corporation's interests, it must be traceable to the future ambitions of the stockholders, which the court could not justifiably advance at the expense of the creditors. It may be that evidence was presented at the hearing on this matter which might have supported a contrary conclusion, but that evidence is not before us.

█ (6) As we view the contract there is no provision for arbitration, as the term arbitration generally is used—viz., a method of settling disputes. The function of the so-called arbitrators was the ascertainment of the price to be paid for the grain, in accordance with the peculiar and technical rules of the trade not commonly known to the layman. They were merely to determine, that is to compute—according to established Board of Trade rules—the price to be paid for the grain. It is true, they were to exercise some judgment as to the day's prices to be taken, but the exercise of that judgment was restricted by limitations specifically set forth in the order.

The order of the District Court is affirmed.