**In the Matter of GRAYSON SHOPS, INC.,
Debtor.**

United States District Court
S. D. New York.

Feb. 3, 1966.

------

Jacob Neuthaler, New York City, for petitioner, Millman Bros., Inc.

Krause, Hirsch, Gross & Heilpern, New York City, for debtor Grayson Shops, Inc.; Elliot L. Krause, New York City, of counsel.

Shapero & Shapero, Detroit, Mich., for Phyllis Birnkrant and another (lessor) and Mayfield Inv. Co.; Harold M. Shapero Detroit, Mich., of counsel.

BONSAL, District Judge:

This is a petition to review two related orders by the Referee in Bankruptcy Herzog. One order, dated August 17, 1965, denied a motion by petitioner, Millman Brothers, Inc. (Millman), for leave to reject its sublease with the debtor Grayson Shops, Inc. (debtor). The other order, dated August 26, 1965, permitted the debtor to (1) withdraw an application for rejection of a lease between debtor and its lessor and (2) approved a stipulation and agreement of settlement assigning debtor's interest in a lease with the lessor as well as debtor's interest in any subleases to Mayfield Investment Company (Mayfield).

The facts relevant to this petition are not in dispute.

In 1947, the debtor entered into a long term lease with lessor Phyllis Birnkrant, et al. (lessor) for certain premises located in Michigan. This lease, as modified on October 7, 1952, limited rights of subleasing by the lessee and provided that in the event of insolvency or bankruptcy of the lessee, the lessor after thirty days has the option to cancel the lease. (Paragraph 7, Modification of October 7, 1952.)

The lease further provided:

"Any consent to subletting * * in this lease shall not create any privity between the subtenant and the Landlord but such subtenant shall hold only under the Tenant herein, and upon termination of this lease by the Landlord by re-entry or otherwise, such subleases * * * shall automatically be cancelled and of no further force and effect * * *." (Paragraph 27, Modification of October 7, 1952.)

Debtor subleased a portion of the premises to Millman in 1947, which sublease through extensions, expires in 1972.

On December 23, 1964, the debtor filed a petition in this court under Chapter XI of the Bankruptcy Act and was permitted by the bankruptcy court to remain in possession.

By petition dated February 2, 1965, debtor moved for permission to reject the main lease.[1] A hearing on this motion was postponed by the debtor from time to time until June 21, 1965.[2] At the June 21st hearing, and over lessor's objections that debtor's motion was in violation of the February 4th agreement (footnote 2), the Referee made a memorandum decision dated June 21, 1965 stating:

"I find that the lease to be [sic] burdensome and debtor is permitted to reject same. Submit order."

---

1. "Upon the filing of a petition, the Court may * * *
      (1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts and to such other parties in interest as the court may designate * * *."
   (§ 713(1) of the Bankruptcy Act.)

2. While this motion to reject was pending, the debtor entered into an agreement dated February 4, 1965 (subject to approval by the bankruptcy court) with its lessor and Mayfield to assign the debtor's interest in the main lease and its interest in the Millman sublease to Mayfield in consideration of a reduction of lessor's claim against the debtor of $10,000. The record does not show that this agreement was ever approved by the bankruptcy court.

No order was entered on the Referee's decision. Subsequently the debtor and lessor entered into a stipulation and agreement of settlement which was approved by the Referee by order dated August 26, 1965 (which order is under review). Under the stipulation and agreement debtor's application for rejection of the main lease was withdrawn. The debtor was permitted to assign its interest in the main lease and its interest in the sublease with Millman to Mayfield and the lessor reduced its general unsecured claim from $126,000 to $50,000

Prior to the entry of the August 26th order, Millman moved in the bankruptcy court for an order authorizing it to reject its sublease with the debtor. After a hearing held August 17, 1965, Millman's motion was denied, which is the second of the two orders here under review. It was during this August 17th hearing that the debtor informed the Referee of the proposed stipulation and agreement with its lessor and moved to withdraw its own motion for rejection of the main lease.

As a result of these two orders of the Referee, the debtor's motion to reject the main lease was withdrawn prior to the entry of any order on the subject. The debtor was permitted to assign its interest in the main lease, and its interest in the Millman sublease to Mayfield. Millman's motion to have its sublease with the debtor rejected was denied.

Millman has failed to demonstrate that the Referee has committed error in denying its motion to reject the sublease, permitting the withdrawal of debtor's motion for rejection, and approving the assignments of the main lease and sublease to Mayfield.

■ The Referee had the power to permit the withdrawal of the motion for rejection of the main lease since no final order had been entered thereon. Such an order was required by the terms of the

Referee's decision of June 21, 1965. (Rule 21(b) Bankruptcy Rules of the Southern District of New York.) Permitting withdrawal of the motion, therefore, did not involve the reopening or setting aside of a prior order. See In re Pottasch Bros. Co., Inc., 79 F.2d 613, 101 A.L.R. 1182 (2 Cir. 1935). Moreover, the motion to withdraw was consented to by lessor, the only other party to the main lease. Under these circumstances, the Referee clearly committed no error in allowing the motion to be withdrawn.

Millman contends that even if the debtor's motion was properly withdrawn, the Referee erred in approving both assignments.

■ Section 313(2) of the Bankruptcy Act grants a referee the power "upon cause shown" to authorize a debtor in possession to sell any property of the debtor "upon such terms and conditions" as the bankruptcy court may approve.[3] A sale may be authorized when it is of advantage to the estate and will aid the ultimate objective of the proceeding. 8 Collier, Bankruptcy, pp. 242–43 (14th ed. 1964).

■ The Referee found that the debtor was out of possession and confronted with a $126,000 claim on the part of the lessor. The debtor entered into a stipulation and agreement with the lessor to assign its interest in the lease and sublease in consideration for a reduction of the lessor's claim to $50,000. The Referee committed no error in approving the stipulation and agreement since they were clearly beneficial to the estate. Cf. In re Rosenbaum Grain Corp., 83 F.2d 391 (2 Cir. 1936).

■ Nor did the Referee err in denying Millman's motion to reject the sublease. It is hard to see that the rejection of the sublease would benefit the estate of the debtor, which was the primary responsibility of the Referee. Neverthe-

---

3. "Upon the filing of a petition, the court may * * * (2) * * * upon cause shown, authorize * * * the debtor in possession, to lease or sell any property of the debtor * * * upon such terms and conditions as the court may approve * * *."

less, Millman claimed some sort of right to have itself released from contracts that are burdensome to it. There is no provision in the sublease barring its assignment or providing that it would be terminated by an assignment. Therefore Millman had no ground for petitioning the Referee to declare the sublease cancelled. Cf. Urban Properties Corp. v. Benson, Inc., 116 F.2d 321 (9 Cir. 1940); 8 Collier, supra, at pp. 225–26.

The Referee took the position that only the debtor had the right to seek rejection of the sublease and that the rejection could be ordered only if beneficial to the estate. See 8 Collier, supra, at p. 229. Therefore, he denied Millman's motion for rejection.

Millman claims that the Referee was in error in stating that only the debtor may reject an executory contract. It is unnecessary, however, to pass upon this point for the Referee specifically found that Millman's motion for rejection of its sublease would be denied even if it had the right to move for such relief. Rejection of the sublease, he noted, would have resulted in the voiding of the agreement between debtor and its lessor which was beneficial to the estate. This alone, he held, constituted grounds for denying the motion. The Referee's finding that rejection of the sublease would not be beneficial to the estate, and therefore must be denied, is fully supported by the record and is in no way erroneous.

The Referee also ruled that a party to an executory contract with the debtor had a right to have his status determined by insisting that the debtor either reject or affirm its contract. See In re Greenpoint Metallic Bed Co., 113 F.2d 881, 883–884 (2 Cir. 1940); Mohonk Realty Corp. v. Wise Shoe Stores, 111 F.2d 287, 290 (2 Cir. 1940), cert. den., 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418; In the Matter of Union-Fern, Inc., 205 F.Supp. 947, 949 (N.D.N.Y.1962). He found that in assigning the sublease the debtor af-

firmed it, since the assignment would be inconsistent with a rejection.

There is no merit to Millman's contention that the assignment of the main lease to Mayfield was in fact a rejection of the main lease and that the sublease fell with it. The agreement between the debtor, Mayfield and the lessor gives no support to Millman's position as it clearly recites an assignment of the main lease.[4]

Millman alleges that Mayfield is a dummy corporation for the lessor and thus there may be a merger of estates under the law of Michigan. Whether this is true or whether any other reason exists under Michigan law whereby the assignment destroyed the sublease is for the Michigan courts, and not the bankruptcy court, to determine.

Millman contends that the debtor has been permitted to reject in part and affirm in part its sublease with Millman. An executory contract, it maintains, can only be completely affirmed or completely rejected. See 8 Collier, supra, p. 228.

Under the sublease Millman is to pay the debtor as rent a fixed minimum plus a percentage rate amounting to 7% of certain gross sales. A covenant between the debtor and Millman, dated September 19, 1952, requires Millman to pay the debtor, within twenty days after the lease year, 35% of the amount the debtor must pay for certain taxes and costs which is in excess of the aggregate the debtor paid for such items in 1952. To the extent that Millman makes such excess payments, it receives a credit as against its total excess percentage rental payments for the lease year. If the aggregate expenditure by the debtor for these items is less than $30,000, Millman receives a credit to the extent of 35% of the difference between $30,000 and the lesser amount as against Millman's total rental paid for the lease year.

Under the stipulation and agreement between debtor, lessor and Mayfield, May-

---

4. "Now, therefore, it is hereby agreed between the parties hereto as follows: 1. Graysons shall assign to Mayfield its les-
see's interest in said lease, with Birnkrant [lessor] * * *."

field accepted assignment of the sublease but took the assignment "subject to the rights and obligations imposed therein, * * *."

Millman argues that since Mayfield took "subject to" the obligations rather than assuming them, Mayfield does not have to fulfill the obligations of the sublease regarding the rent credit. Similarly, the debtor, by assigning the sublease, is no longer liable to Millman for fulfilling its provisions. In effect, claims Millman, the debtor affirmed by assignment that part of the sublease which grants it the right to collect rent, but rejected that part which imposed duties upon it. Therefore, Millman concludes, it is entitled to reject its sublease.

Millman's position is based upon a misunderstanding of the facts and law.

It is far from clear that Mayfield is under no legal obligation to fulfill the the covenant in the sublease regarding rental credits. It is quite probable that Mayfield has assumed liability either by privity of contract or privity of estate or both. See generally, annot., 42 A.L.R. 1173 (1926); 32 Am.Jur. Landlord and Tenant, §§ 367, 370 (1941). However, it is not necessary to determine whether Mayfield is obligated to perform the covenants contained in the sublease. Even if Mayfield need not, or will not perform, Millman is adequately protected.

 A contracting party cannot by an assignment of a contract relieve himself of the contract's obligations. The assignor remains bound by the contractual obligations and is liable to the other party if the assignee defaults. See generally, 4 Corbin, Contracts, § 866 (1951); 6 C.J.S. Assignments §.112 (1937). Therefore, if in the future the assignee Mayfield should not perform the obligations under the sublease, Millman may hold the debtor liable through an appropriate action.

There is nothing in the record to indicate that it was the intention of the Referee or any of the parties to permit the debtor to relieve itself of its liability by assignment of the sublease. In fact, the Referee specifically stated that Millman could sue the reorganized debtor if the obligations under the assigned sublease were not fulfilled by Mayfield. (Hearing, August 17, 1965, pp. 21–23.)

The facts and the law make clear that there has been no partial rejection of the sublease. Either Millman, the debtor, or both are liable for the performance of the sublease. Millman has in no way been injured by the orders of the Referee. Therefore, Millman has failed to demonstrate that it is entitled to reject its sublease with the debtor.

The orders of the Referee are affirmed and the petition to review dismissed.

It is so ordered.