In the Matter of **MIRACLE MART, INC.,** Debtor.

No. **66 B 958.**

United States District Court S. D. New York.

Jan. 8, 1968.

Ballon, Stoll & Shyman, New York City, for debtor.

Hale & Dorr, Boston, Mass., Frederick G. Fisher, Jr., Boston, Mass., of counsel, and Rathheim, Abrams, Hoffman & Kassel, New York City, Harold Hoffman, New York City, of counsel, for Costume Jewelry of Ohio, Inc., Costume Jewelry of Indiana, Inc., Discount Jewelry of Norwood, Inc., and Costume Jewelry of Michigan, Inc., and other petitioners.

MANSFIELD, District Judge.

Petitioners seek review of orders of Referee in Bankruptcy Asa S. Herzog dated October 13, 1967, classifying their claims against the debtor as general unsecured claims rather than as claims entitled to a priority status as costs of administration.

The debtor has been in the business of operating a chain of retail stores selling general merchandise, various departments of which were leased to petitioners as independent concessionaires under agreements obligating petitioners to remit a portion of their gross sales to the debtor. On December 19, 1966, the debtor filed a petition for arrangement under Chapter XI, § 322, of the Bankruptcy Act, 11 U.S.C.A. § 722, pursuant to which it continued to operate its business as debtor in possession. The first meeting of creditors was held on January 24, 1967.

Prior to July 24, 1967, when the six-month period for filing of claims expired, the debtor ceased operations in some of its stores, causing some of petitioners, referred to by the parties as the "Jewelry Corps." petitioners,[1] to shut down departments operated by them therein. On October 13, 1967 the Referee entered orders formally rejecting these leases pursuant to § 313(1) of the Bankruptcy Act,[2] and allowing these petitioners ten days within which to file general un-

---

1. Costume Jewelry of Indiana, Inc., Costume Jewelry of Michigan, Inc. (with locations in Grand Rapids, Kalamazoo, Muskegon, Warren and two in Detroit), Discount Jewelry of Norwood, Inc. (with locations in Lynchburg and Richmond), and Costume Jewelry of Ohio, Inc.

2. "Upon the filing of a petition, the court may, in addition to the jurisdiction, powers, and duties conferred and imposed upon it by this chapter—

"(1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts and to such other parties in interest as the court may designate."

secured claims for damages arising from rejection, which damages were based upon forced liquidation of inventory, equipment and fixtures, and loss of profits *in futuro*. The remaining petitioners[3] had leased departments in stores which the debtor in possession continued to operate. By orders dated October 2 and 3, 1967, the Referee ordered these leases rejected pursuant to § 313 (1), with leave to these petitioners within ten days to file proof of claims for damages similar to the Jewelry Corps. petitioners. All the petitioners filed claims within the time allowed by the Referee, who classified them as general unsecured claims.

An executory contract may be rejected with the permission of the court, § 313(1), or pursuant to a provision in the plan, § 357(2), neither of which section places any time limitation on when rejection may occur. Rejection constitutes a breach of the contract as of the date of the filing of the § 322 petition, § 63(c), and the other party to a rejected executory contract is deemed to be a creditor, § 353. Claims arising from the rejection of executory contracts must be filed within six months from the first date set for the first meeting of creditors, §§ 369(3), 355 and 57(n). Since the rejection of the executory contracts in the present case postdated the six-month cutoff date for filing of claims, the Referee allowed petitioners ten days within which to file their claims, noting that Congress, in enacting § 313(1), had apparently overlooked the necessity of providing for a different time bar when executory contracts are rejected after the six-month period. See Seligson, Creditors' Rights in 1963 Annual Survey of American Law.

■ Petitioners contend that their claims cannot be classified as general unsecured claims because such claims must be filed within the six-month period, but that since it would be unfair to preclude

them from filing claims arising from rejection after the six-month deadline, their claims should be classified under the only rubric available, namely, as expenses of administration, thus entitling them to priority status under § 64.

The effect of petitioners' contentions would be to accord them a windfall because of a technical inadequacy, or oversight, on the part of Congress. We agree with the Referee and the parties that it would be unfair to preclude petitioners from filing claims on the ground that the rejections postdated the six-month time bar for filing of claims. However, nothing inherent in the nature of claims arising from the rejection of executory contracts entitles them to be treated as costs of administration rather than as general unsecured claims. It would be both inequitable and illogical to hold that such claims, merely because they could not qualify as "provable" claims for filing within the six-month period, should be treated as expenses of administration, a priority status which they admittedly would not have enjoyed if the rejection had occurred within the six-month period. The sensible and equitable solution is that followed by the Referee, namely, to permit petitioners a reasonable time within which to file their claims as unsecured creditors, cf. In re Greenpoint Metallic Bed Co., 113 F.2d 881 (2d Cir. 1940), thus placing them substantially in the same position they would have occupied if their leases had been rejected prior to the expiration of the six-month period.

■ Petitioners complain that the delay in rejection deprived them of the opportunity to participate in the proceedings as creditors. However, if petitioners had been interested in learning their status at an earlier date, they could have required the debtor to reject or affirm their leases. In re Greenpoint Metallic Bed Co., supra; In re Grayson Shops, Inc., 252 F.Supp. 145 (S.D.N.Y.1966).

3. Bama Stores of Pennsylvania, Inc., Di-Deb of Michigan, Inc., Di-Deb of Pennsylvania, Inc., Di-Deb of Keystone, Inc., Di-Deb of Washington, D. C., Inc., Di-Deb of Michigan, Inc., Di-Deb of Virginia, Inc., Alric Drugs of Gratiot, Inc., Di-Deb of Dayton, Inc., Di-Deb of Nutmeg, Inc., and Mi-Law of Ohio, Inc.

Furthermore, petitioners' parent company, Marrud, Inc., as a member of the Creditors Committee, elected pursuant to § 338, was in a position to participate actively in the formulation of the plan. Finally, it appears that petitioners did have the opportunity to object to confirmation of the plan following rejection of their contracts.

Accordingly, the orders of the Referee classifying petitioners' claims as general unsecured claims are affirmed and the petitions to review are dismissed.

So ordered.