## In re GILLESPIE TIRE CO.
### No. B-1691.

District Court, W. D. South Carolina,
Greenville Division.
Sept. 25, 1942.

J. W. Hicks and Price & Poag, all of Greenville, S. C., for Gillespie Tire Co.

Haynsworth & Haynsworth, of Greenville, S. C., for General Tire & Rubber Co. and for Trustee.

WATKINS, District Judge.

The Gillespie Tire Company was adjudicated a voluntary bankrupt on February 25, 1941, and by Order of General Reference dated February 26, 1941, the case was referred to E. M. Blythe, Referee in bankruptcy.

Ever since the date of its organization in January, 1938, the corporation had been managed and controlled and its business conducted entirely by Mrs. Mabry Gillespie, its President and Treasurer, and owner of 98% of the capital stock. It appears further from the testimony adduced in the case that Mrs. Gillespie had owned the business personally prior to its incorporation and after its bankruptcy in 1941 proceeded to conduct the same business in the same manner and at the same place.

Before entering upon a discussion of the financial transactions of Mrs. Gillespie, Mabry Gillespie Tire Co. and the Gillespie Tire Company, it is important to review the manner in which the business was conducted and the essential ownership of same. The Gillespie Tire Company was incorporated in January 1938, with an authorized

capital stock of $10,000, of which one share each was issued to J. C. Butler and Boyce Green, and the remainder to Mrs. Mabry Gillespie. Mrs. Mabry Gillespie, J. C. Butler and Boyce Green were elected directors. Mrs. Gillespie was named President and Treasurer of the company and had complete supervision and control of it from its organization until it was adjudicated bankrupt on February 26, 1941. Boyce Green acted as bookkeeper throughout. The testimony indicates conclusively that during the whole of its existence, Mrs. Gillespie was to all legal intents the Gillespie Tire Company, was its alter ego, and the shares issued to Green and Butler were so issued not for the purpose of giving them any control of the company but as qualifying shares in order to comply with corporation statutory requirements.

In October 1939, at a time when the Gillespie Tire Co. was insolvent, Mrs. Gillespie caused the corporation to transfer its business assets and liabilities to the Mabry Gillespie Tire Co., which was not incorporated but was used by her as a trade name under which she might personally, and did, beginning on that date, conduct the business for about five months, that is, until April 1940. Mrs. Gillespie testified that she conducted the business in the manner stated because the Gillespie Tire Co. did not have sufficient credit with which to continue. However, there is no dispute of the fact that she took over all the assets of the corporation, treated them as her own, made collections of outstanding accounts and sold the physical properties in such manner as to establish the fact not only that she was in reality the corporation, but her dealings with its properties conclusively established the fact that she was clothed with all of the liabilities and responsibilities of a trustee. A significant fact going to show the violation of this trust relationship and the liability incurred by Mrs. Gillespie personally, is the manner in which after taking over the corporation and when it was, to say the least, in a very precarious financial condition, she charged and paid to herself large salaries and rentals and gave preference in payment of corporate liabilities to favored creditors at the expense particularly of General Tire & Rubber Co., her largest creditor. We will not take time here to discuss the details of the manner in which she conducted the business after she decided in April 1940 again to conduct it under the corporate name of Gillespie Tire Co. The evidence is sufficient to convince the Court, although the referee did not so find and there is no exception to his report in that respect, that in these transactions a legal fraud was committed against the interest of certain creditors for which Mrs. Gillespie should be liable. The report and order of the referee which bears date, March 24, 1942, contains an able discussion both of the law and of the facts of the case, and his final conclusions in both respects meet with the approval of this Court.

It appears that in due course after adjudication of the bankrupt, claims were filed against the estate, including certain claims of Mrs. Gillespie personally for salary, rent and moneys alleged to have been advanced or paid by her for the corporation, and including also an unsecured claim for $13,092.27 filed by the principal creditor, General Tire and Rubber Company.

In view of all the circumstances and the objection made by General Tire & Rubber Co. and the Trustee, to Mrs. Gillespie's claims, it was agreed that an audit of the books and accounts of Gillespie Tire Co. should be made prior to the taking of testimony in order that all facts concerning the financial transactions of the bankrupt, should be clearly before the Court. Upon completion of this audit, the accuracy of which has not been questioned, two references were held, the first on September 5, 1941, at which 24 pages of testimony were taken and the second which was a continuation of this hearing and at which 28 additional pages of testimony were taken. At these hearings, numerous exhibits were introduced, including minutes of meetings, audits and books of account of Gillespie Tire Co., and likewise books and accounts of Mabry Gillespie Tire Co., the trade name under which Mrs. Gillespie personally transacted business. At the hearings, objection was made to the claim of Mrs. Gillespie and testimony was taken in regard thereto, and the request was made that the Trustee be directed to bring suit against Mrs. Gillespie for $22,216.68, moneys alleged to have been improperly received by her from the Bankrupt. Involved in the question of suit by the Trustee, were not only the independent claims of the corporation against Mrs. Gillespie, but also the right to apply offsets to the claims which she had filed.

At the conclusion of the foregoing proceedings, and after going into the matter

338

at great length, both in the testimony and in argument, the referee filed his order and report above referred to, in which some of Mrs. Gillespie's claims were allowed and others rejected. The referee also reached the conclusion that since Mrs. Gillespie was already before the Court, and full testimony had been taken relative to all claims and offsets, he had jurisdiction to render judgment against her personally, and it was not necessary that the Trustee bring suit. Accordingly he directed in his report that the Trustee have judgment against Mrs. Gillespie for certain amounts received by her from the bankrupt corporation by way of rent and salary. The law and facts upon which the order of the referee is based, are so well and fully presented, it is unnecessary that this Court repeat the details in this order.

The attorneys for Mrs. Gillespie excepted to the referee's report and a hearing was had before me at which certain questions were raised, including the question of the jurisdiction of the referee to render judgment. In order to be entirely fair to all parties, the court on its own motion recommitted the matter to the referee for a supplemental report, and such report was duly filed. In this supplemental report the referee explains that although the original contention of counsel for General Tire and Rubber Co. and the Trustee was that an independent suit should be filed by the Trustee, after hearing the matter fully, the referee came to the conclusion that under the Chandler Act an independent suit was not necessary, that the evidence had been gone into so fully and showed so conclusively that the trustee was entitled to judgment in the case in which Mrs. Gillespie was a party, he was of the opinion that if a suit were brought in another court by the trustee there would be no substantial difference in proof or claims, and hence to require suit to be brought under the circumstances would be to prolong the litigation unnecessarily.

When the matter again came before me, after the filing of the referee's supplemental report, counsel for Mrs. Gillespie insisted that the case had been tried and evidence taken upon a misunderstanding; that they had other testimony which they would have offered, if given an opportunity, to show the non-liability of Mrs. Gillespie upon the items asserted against her and upon which judgment was rendered by the referee. Upon this contention being presented, in order to be entirely fair and to afford counsel for Mrs. Gillespie full opportunity to present such additional evidence as they might have bearing upon the questions involved, the court on its own motion again recommitted the matter to the referee. Counsel, at the court's request, agreed to prepare and did prepare certain stipulations, not necessary here to be recounted, which were filed with the referee outlining the issues to be covered in the testimony. Another hearing was held and testimony taken and the referee in his report thereon stated, and I fully agree with him, that no additional testimony had been presented which in any way affected his first conclusions. The main issue, and in fact the only substantial issue remaining in the case, is one of law—the question of the jurisdiction of the referee and of the court in this action not only to pass upon the claims of Mrs. Gillespie, but also to hear and give judgment against her personally upon the claims presented by the trustee.

The general purpose of the Amendatory or Chandler Act of 1938 was to clarify the Bankruptcy Law and improve administrative processes, and also as to the powers and jurisdiction of referees in bankruptcy, Geo. E. G. Johnson of the Chicago Bar, in his Commentary on the Chandler Act has this to say.

"Clarification of Jurisdictional Provisions. Referees. The district courts of the United States and that of the District of Columbia, are designated in the new Act, as 'Courts of Bankruptcy' and when the word 'court' is used in the Act it means 'referee' as well as judge. On a general reference, which may be made by the judge before as well as after adjudication, *the referee now has complete jurisdiction of the proceedings, including* proceedings for the debtor's discharge, ancillary proceedings, and proceedings for arrangements." Title 11, U.S.C.A. § 201 to End, page XIII.

The referee has jurisdiction under Title 11, U.S.C.A. § 11, sub. a(15), to "make such orders, issue such *process, and enter such judgments,* in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title."

Other sections of the Bankruptcy Act relating to powers and jurisdiction of the referee are found in Title 11 U.S.C.A. § 1(9), § 11 sub. a(2) (7) (18) and § 66.

As to the extent of the jurisdiction of the referee, the case of In re California Pea Products, Inc., D.C., 37 F.Supp. 658, 662, is in point. There the court said:

"When a general reference has been made by the judge to a referee, as in this matter, he is, under the Chandler Amendments to the Bankruptcy Act and under new General Order 12, 11 U.S.C.A., following section 53, *invested with complete jurisdiction of the proceedings, and the referee under such reference can do everything that the district judge can do,* except certain specific powers which are reserved to the judge, but which are immaterial to this review or to the acts of the referee under consideration in this matter, under the factual situation shown by the record."

The limitations upon the power of a referee in bankruptcy emphasized in Chandler v. Perry, 5 Cir., 74 F.2d 371, have to a great extent been done away with by the enactment of the Chandler Act, and it is now unquestionably true that under a general order of reference as in the case now under consideration, the referee is the court and except as to review by the District Judge or reversal on appeal, the referee's general powers are as full and complete as those of the District Judge himself, including enlarged equity powers and full jurisdiction of cause and parties properly brought into or appearing voluntarily before his court. See the later case of Donald v. Bankers Life Co., 5 Cir., 107 F.2d 810, later decided by the same court.

The cases of United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 32 S. Ct. 620, 56 L.Ed. 1055, heard on appeal from the Fourth Circuit, and Dean v. Davis, 242 U.S. 438, 439, 37 S.Ct. 130, 61 L.Ed. 419, discuss the general jurisdiction of the bankruptcy court and hold that the jurisdiction of this court under the Bankruptcy Act is intended to be exclusive of all other courts, and that such proceedings include matters of administration such as the allowance and rejection of claims etc.

As stated in United States Fidelity & Guaranty Co. v. Bray, supra [225 U.S. 205, 32 S.Ct. 625, 56 L.Ed. 1055]:

"A distinct purpose of the bankruptcy act is to subject the administration of the estates of bankrupts to the control of tribunals clothed with authority and charged with the duty of proceeding to final settlement and distribution in a summary way, as are the courts of bankruptcy. Creditors are entitled to have this authority exercised, and justly may complain when, as here, an important part of the administration is sought to be effected through the slower and less appropriate processes of a plenary suit in equity in another court, involving collateral and extraneous matters with which they have no concern, such as the controversy between the complainant and the indemnitor banks."

The case of In re Prima Co., 7 Cir., 98 F.2d 952, cited by counsel for Mrs. Gillespie, arose and was decided just before the Chandler Act went into effect. This involved a voluntary reorganization proceeding of the debtor under secs. 77A and 77B of the Bankruptcy Act, 11 U.S.C.A. §§ 206, 207, and is not in point in the instant case.

The cases of In re Mt. Forest Fur Farms of America, 6 Cir., 122 F.2d 232; Kelso et al. v. Maclaren, 8 Cir., 122 F.2d 867; Warder v. Brady, 4 Cir., 115 F.2d 89; and In re Quan Weing et al., 2 Cir., 104 F.2d 112, referred to by counsel for Mrs. Gillespie, likewise are altogether different in principle from the case under consideration. It would make this order unnecessarily long to discuss in detail the distinguishing features of these and other cases cited by counsel.

Even before the Chandler Act went into effect the Supreme Court as well as Congress recognized the necessity of freeing the bankruptcy courts from too narrow a view of their jurisdiction. This view is well expressed in the case of Wright v. Union Central Life Ins. Co., 304 U.S. 502, at pages 513 and 514, 58 S.Ct. 1025, at page 1032, 82 L.Ed. 1490, in which after discussing the power granted to Congress by the Constitution to legislate on the subject of bankruptcy as set out in Article I, section 8, Clauses 4 and 18, Mr. Justice Reed says:

"* * * the subject of bankruptcies is incapable of final definition. The concept changes. It has been recognized that it is not limited to the connotation of the phrase in England or the States, at the time of the formulation of the Constitution. An *adjudication in bankruptcy is not essential to the jurisdiction.* The subject of bankruptcies is nothing less than 'the subject of the relations between an insolvent or nonpaying fraudulent debtor and his creditors, extending to his and their relief.'"

The decisions under the Chandler Act particularly stress the fact that where parties and causes under its jurisdiction have once been brought into the court of bankruptcy, or creditors have by presenting their claims, or supposed claims, sub-

mitted themselves to the jurisdiction of the court by the assertions of these claims, the court in its equitable powers has full authority to adjust the respective claims which may exist between such creditors and the bankrupt speaking through its trustees, and the creditor having voluntarily appeared in the court for the purpose of asserting his claim, cannot escape the result brought by himself, not only of having the bankrupt through its trustee offset valid claims in its or his behalf against such creditor, but also the result of asserting its claims in full, whether the counter-claim be large or small. The voluntary appearance in the court is sufficient, and there is unanimity of opinion that no formal pleading is necessary to produce that result, provided the opposing parties in each case are fully advised at the hearing before the referee as to the amount and nature of these claims.

As stated in the case of In re Park Beach Hotel Bldg. Corporation, 7 Cir., 96 F.2d 886, 892, certiorari denied Pancoe v. Southman, 305 U.S. 638, 59 S.Ct. 105, 83 L.Ed. 411:

"Nor can any objection to the form of the proceeding, the presence or absence of formal pleadings defeat the power of the court; it acts summarily; it need have no pleadings before it, and any insufficiency in that respect cannot be urged as error in a reviewing court." Dean v. Davis, 242 U. S. 438, 37 S.Ct. 130, 61 L.Ed. 419.

■ Mrs. Gillespie was certainly before the court in this case. She asserted certain claims against the bankrupt corporation and voluntarily appeared and gave testimony on the occasion of the three hearings before the referee, relative to the organization of the corporation, the conduct of its business, the financial transactions between herself and the corporation, and her personal liability. Both Mrs. Gillespie and her counsel were afforded every opportunity to present any and all evidence they might have which had any bearing upon the matters in issue. There is every reason therefore, why the findings of the referee should be sustained.

There are a number of cases of the Supreme Court, both before and since the Chandler Act went into effect, evincing how thoroughly the jurisdiction of the bankruptcy court is recognized in cases where claims are asserted by an individual party who was the dominant stockholder in the bankrupt, and in effect its alter ego,

and these decisions embrace cases not only of fraud by such dominant stockholders, but cases in which the trust relation because of such dominance required such stockholder to refrain from using the corporation as a vehicle to further his or her financial interest, or to discriminate against the corporation, or to act otherwise than as a trustee for a fair and equitable pro rata distribution of the funds of the corporation among its stockholders and/or creditors.

In the case of Pepper v. Litton, 308 U. S. 295, 60 S.Ct. 238, 84 L.Ed. 281, the opinion embraces a forceful and somewhat extended review of the equitable powers of the bankruptcy court in general and in particular in cases where the dominant stockholder comes into court to assert claims which must be disallowed because of a violation of the trust relationship. This case was decided after the Chandler Act went into effect, but the facts upon which it was decided and the case therein reviewed under appeal, arose before the passage of the Chandler Act.

The case of Sampsell, Trustee, v. Imperial Paper & Color Corporation, 313 U. S. 215, 61 S.Ct. 904, 907, 85 L.Ed. 1293, while not on all fours with the instant case, is illuminating. In that case one Downey was adjudged a voluntary bankrupt in November 1938. Prior to June 1936 he had been engaged in business, unincorporated, and had incurred a debt to the predecessor of Standard Coated Products Corporation of approximately $104,000. In June 1936 Downey formed a corporation under the name of Downey Wallpaper & Paint Co. He together with his wife and son were sole stockholders, directors and officers. The Downey stock of goods was transferred to the corporation on credit which was extended from time to time. He leased space in the store building occupied by him to the corporation, which continued business in the old stand. Except for qualifying shares neither he nor the other members of his family paid cash for the stock which was issued to them, but received most of those shares a few months prior to bankruptcy in satisfaction of the balance of the obligation *owed to him* by the corporation. At the time of Downey's bankruptcy respondent's claim amounted to about $5,400 which was unsecured. At the hearing by the referee on petition of trustee in bankruptcy in which the Corporation, Downey, his wife and son, were directed to show cause why the assets of the corporation should not be marshalled for the

benefit of the bankrupt estate, the referee found inter alia, that the transfer of the property to the corporation was not in good faith but for the purpose of placing the property beyond the reach of Downey's creditors and of retaining for Downey and his family all the beneficial interests therein, that the stock was issued in satisfaction of Downey's claim against the corporation when Downey was hopelessly insolvent and was in order to prevent Downey's creditors from reaching the assets so transferred. Also that the corporation was nothing but a sham and cloak devised by Downey for the purpose of preserving and conserving his assets for the benefit of himself and family, and that the corporation was formed for the purpose of hindering, delaying and defrauding his creditors. The referee ordered that the property of the corporation was the property of the bankrupt estate and that it be administered for the benefit of the creditors of the estate. No appeal was taken from that order, but respondent, Imperial Paper & Color Corporation which was not a party to the aforesaid proceeding later filed its claim stating that as a creditor of the Downey Corporation, it had a prior right to the distribution of the funds in the hands of the trustee received from the liquidation of the assets of the corporation. The trustee objected. At the hearing the referee found that respondent with knowledge of Downey's indebtedness was instrumental in getting him to form the corporation and had full knowledge of its fraudulent character. He, therefore, disallowed respondent's claim as a prior claim but allowed it as a general unsecured one. This order was confirmed by the District Judge, but on appeal was reversed by the Circuit Court of Appeals which held that respondent's claim should be accorded priority from the funds realized from the liquidation. The Supreme Court Opinion by Mr. Justice Douglas reversed the Circuit Court of Appeals, holding that the bankruptcy court properly exercised jurisdiction, saying:

" * * * The circumstances are many and varied where an affiliated corporation does not have, as against the trustee of the dominant stockholder, the status of a substantial adverse claimant within the rule of Taubel-Scott-Kitzmiller Co. v. Fox, 264 U. S. 426, 44 S.Ct. 396, 68 L.Ed. 770. * * * Mere legal paraphernalia will not suffice to transform into a substantial adverse claimant a corporation whose affairs are so closely assimilated to the affairs of the dominant stockholder that in substance it is little more than a corporate pocket. Whatever the full reach of that rule may be, it is clear that a family corporation's adverse claim is merely colorable where, as in this case, the corporation is formed in order to continue the bankrupt's business, where the bankrupt remains in control, and where the effect of the transfer is to hinder, delay or defraud his creditors. (Citing authorities). Hence, Downey's corporation was in no position to assert against Downey's trustee that it was so separate and insulated from Downey's other business affairs as to stand in an independent and adverse position. * * *" Reversing Imperial Paper & Color Corp. v. Sampsell, 9 Cir., 114 F.2d 49.

In this case, Mrs. Gillespie was the dominant, in fact practically the sole stockholder in Gillespie Tire Co., the bankrupt, and in complete control of the corporation. Her affairs and those of the bankrupt were so closely assimilated that in substance, the corporation was little more than a corporate pocket. She was not an adverse claimant, but was in legal contemplation, the corporation itself. In making payments of rent and salary to Mrs. Gillespie, the alter ego of Gillespie Tire Company, the bankrupt was, so to speak, merely transferring money from one pocket to another, the effect of which was to defeat creditors' just claims.

The case of Stone et al. v. Eacho, 4 Cir., 127 F.2d 284, 288, contains an interesting opinion by Judge Parker and indicates how far the courts would and should go in sustaining the jurisdiction of the referee in bankruptcy cases where the separate entity of the parent corporation and of certain subsidiaries is sought to be pleaded to defeat the general jurisdiction of the court. As stated by Judge Parker:

"It is well settled that courts will not be blinded by corporate forms nor permit them to be used to defeat public convenience, justify wrong or perpetrate fraud, but will look through the forms and behind the corporate entities involved to deal with the situation as justice may require."

A thorough review of the authorities bearing upon the questions involved, convinces me that the referee had jurisdiction to render judgment against Mrs. Gillespie personally, and after a very careful consideration of the record in this case and the written briefs of counsel, in addition to oral arguments before me on two occasions,

342

I am of the opinion that the findings of fact and conclusions of law of the referee must be confirmed.

It is therefore ordered, adjudged and decreed:

1. That the exceptions filed by the attorneys for Mrs. Gillespie, be and they are hereby overruled.

2. That the findings of fact and conclusions of law of the referee as contained in his reports and orders filed with this court, be and they are hereby approved and confirmed.

3. That Oscar Hodges, Trustee in bankruptcy, have judgment against Mrs. Mabry R. Gillespie Butler for the sum of $7451.96, of which $6745 represents salary paid to her from October 1939 to February 1941 and $706.96 represents interest on the same from the respective dates paid, to date of the referee's order.

4. That Oscar Hodges, Trustee, have judgment against Mrs. Mabry R. Gillespie Butler for the sum of $1721.26, of which $1575 represents rent paid to her from June 1940 to October 1940, and $146.26 represents interest thereon from date of payment to date of the referee's order.

The record shows that since the beginning of this proceeding, Mrs. Gillespie became, and is now, the wife of J. C. Butler.