Joaquin CASTAÑER, Debtor,
Appellant,

v.

Rafael MORA, Creditor, Appellee.

No. 5054.

United States Court of Appeals
First Circuit.

July 6, 1956.

Jorge F. Romany, San Juan, Puerto Rico with whom Romany & Romany, San Juan, Puerto Rico, was on brief, for appellant.

Anibal Padilla Ponce, Puerto Rico, for appellee.

Before MAGRUDER, Chief Judge, and BIGGS * and WOODBURY, Circuit Judges.

BIGGS, Circuit Judge.

The appellant-bankrupt, Joaquin Castañer, filed a petition on November 1, 1949 for a real property arrangement pursuant to Chapter 12 of the Bankruptcy Act, 11 U.S.C.A. § 801 et seq. The case was duly referred to the Referee in Bankruptcy. On February 27, 1950, the appellee-creditor, Rafael Mora, filed a claim with the Referee secured by a mortgage on some 200 acres of land in Puerto Rico to guarantee the payment of $15,200 by the bankrupt with interest at

6%. The mortgage was duly registered. The bankrupt filed an objection to the claim, asserting that no money was owed by him to Mora and that no consideration had been given for the mortgage. On February 9, 1952, after a hearing, the Referee found that the mortgage was valid, that the amount of $15,200 had been given therefor, and allowed Mora's claim "as a secured claim in the amount of $15,000.00 plus interest at 6% to the date of the filing of these proceedings." This order was reviewed by the United States District Court for the District of Puerto Rico and was affirmed.

On September 4, 1953, finding an arrangement under Chapter 12 to be impossible, the Referee terminated those proceedings and adjudicated Castañer a bankrupt. Various other steps were had in the proceedings which are not pertinent here and need not be referred to. It is sufficient to state that the Referee made an order on March 22, 1955, directing the land subject to the mortgage to be sold at public sale on April 19, 1955, free and clear of all liens and encumbrances, liens and encumbrances to attach to the proceeds of the sale in their proper order or priority. On that day the bankrupt tendered to the trustee the sum of $8,000 and made reference to collections and sums of money held by the trustee from the sale of crops and other property of the bankrupt amounting to approximately $9,500 more. It is not clear from the record as to whether the bankrupt intended this as an offer to purchase the real estate securing Mora's claim, or whether he intended to pay off Mora's secured claim. It seems to have been the view of the bankrupt, however, that $17,500 had been made available by him for one of the purposes indicated.

Also on April 19, 1955, Mora moved for a recomputation of principal and interest on his secured claim. He asserted that the amount originally allowed was erroneous in that the principal was understated by the sum of $200 and the inter-

* Judge Biggs, a circuit judge of the Third Circuit, was designated to sit in the Court of Appeals for the First Circuit by Mr. Chief Justice Warren.

est thereon was allowed only to November 1, 1949, the date of the filing of the petition for a real property arrangement, instead of to the date of payment of the claim. In an order issued on May 24, 1955, after due hearing, the Referee adopted this view and allowed the amendment, settling Mora's claim "in the amount of $15,200.00 as principal plus interest at 6% up to but not in excess of $6,570.00 to the date of payment, plus $250.00 for attorneys fees and costs; said claim to be allowed with a secured status." Mora's motion for recomputation had concluded with these words: "[T]his creditor stands on his rights as a secured creditor, ratifying his disposition to accept the security (farm) in payment for his claim." The Referee, treating these words, quite properly, as an offer and finding the amount of Mora's recomputed claim to be in excess of the consideration proffered by the bankrupt, in the same order directed the trustee to consider the sale to Mora as confirmed, unless the bankrupt redeemed the property within ten days. The District Court reviewed the Referee's order and affirmed. From that decision the bankrupt appeals.

■ Before proceeding to discuss the merits of the controversy, we state that the proffer asserted by the bankrupt to have been made by him in the sum of $17,500 was no offer to purchase the real estate secured by Mora's claim and no offer to pay off Mora's claim. The bankrupt proposed to employ cash or other assets in the bankruptcy estate either as an aid in paying off a secured creditor or as the purchase price of real estate securing that creditor's claim. He proposed doing this despite the fact that there were general creditors and, apparently, unpaid tax claims. The bankrupt's proffer was properly disregarded by the Referee. It was the trustee's duty to obtain the best price for all of the assets of the bankruptcy estate and to hold those assets not subject to any lien for the benefit of the general creditors. To permit a bankrupt to employ such assets to recover a mortgaged property for his own benefit or to pay off a mortgagee would be insupportable.

The substantial question presented by this appeal is whether, after a lapse of three years, the Referee could validly recompute the amount of a secured claim, allowing a larger amount.

■■ First, it is clear that the Referee erred in his order of February 9, 1952 in that he allowed a lower principal amount than that to which Mora was entitled and in that he computed the interest on the claim secured by the mortgage only to the date of the initiation of the real property arrangement proceedings, viz., November 1, 1949. The first error seems to have been a miscalculation in arithmetic. The second error seems to have been a misunderstanding of the law. Mortgagees are entitled to interest up to the date of payment where the proceeds of the mortgaged property sold by the bankruptcy trustee are sufficient to pay principal and interest. Coder v. Arts, 1909, 213 U.S. 223, 245, 29 S.Ct. 436, 53 L.Ed. 772; In re Macomb Trailer Coach, 6 Cir., 1952, 200 F.2d 611, certiorari denied sub nom. McInnis v. Weeks, 1953, 345 U.S. 958, 73 S.Ct. 940, 97 L.Ed. 1378; Kagan v. Industrial Washington Machine Corp., 1 Cir., 1950, 182 F.2d 139, 146. In making his order of May 24, 1955, the Referee corrected his previous mistakes and confirmed the sale of the real estate to Mora on the terms heretofore stated.

■ Did the Referee possess the power to make the corrections? We are convinced that he did and we base our conclusions on several grounds. First, Section 2 sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 11 sub. a(2), provides that courts of bankruptcy may "Allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them against bankrupt estates * *", Section 38(6), 11 U.S.C.A. § 66(6), where the order of reference has been a general one, confers on a referee in bankruptcy the powers of a court of bankruptcy. In re Gillespie Tire Co., D. C.S.C.1942, 54 F.Supp. 336. It should be

noted that the limitations upon the power of the referee, emphasized in Chandler v. Perry, 5 Cir., 1934, 74 F.2d 371, were almost done away with by the Chandler Act and that the referee is in substance the court. Donald v. Bankers Life Co., 5 Cir., 1940, 107 F.2d 810. Section 2, sub. a(2) is rarely referred to in respect to reconsideration of claims but it conferred ample authority on the Referee in the instant case to reconsider and to allow Mora's claim in the larger and correct amount.

Second, Section 57, sub. k, 11 U.S.C.A. § 93, sub. k, authorized the Referee to make the corrections in the instant case. Section 57, sub. k provides: "Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed." This is to be read in conjunction with General Order 21(6), 11 U.S.C.A. following section 53, which states: "When the trustee or any creditor or the bankrupt or debtor shall desire the reconsideration of any claim allowed against the estate, he may apply by petition to the referee to whom the case is referred for an order for such reconsideration, and thereupon the referee shall make an order fixing a time for hearing the petition, of which due notice shall be given by mail addressed to the creditor. At the time appointed the referee shall take the examination of the creditor, and of any witness that may be called by either party, and if it shall appear from such examination that the claim ought to be expunged or diminished, the referee may order accordingly."

It has been suggested that Section 57, sub. k and General Order 21(6) may not be availed of by a creditor who seeks reconsideration of his own claim but may be employed only by the trustee in bankruptcy or by a creditor who seeks re-examination of another creditor's claim already allowed by the referee to the end that the claim may be reduced, expunged

or denied priority. A statement to that effect was made by the Circuit Court of Appeals for the Second Circuit in In re Jayrose Millinery Co., 1937, 93 F.2d 471, 474–475. In the Jayrose case the City of New York claimed priority for amounts due it by way of city taxes on retail sales and priority was denied. Thereafter an application was made under Section 57, sub. k for reconsideration by the referee. The referee reconsidered the claim and again denied it priority. The district court affirmed the referee's conclusion. The Circuit Court of Appeals stated [93 F.2d 474]: "A creditor whose claim has been allowed for a smaller sum than claimed or with a denial of an asserted priority cannot get a reconsideration under 57, sub. k. The purpose of this section is to protect the estate against claims which have been erroneously allowed; not to protect the creditor against partial disallowance." No authority was cited for this proposition. The Court went on to say, however: "This conclusion does not mean that the city was remediless * * *. Whatever may be the rule in other circuits, it is settled here that referees have power to grant rehearings even after the time for review of their orders by the District Court has expired", citing In re Pottasch Bros. Co., 2 Cir., 1935, 79 F.2d 613, 101 A.L.R. 1182, written by Judge Learned Hand. The Court on the basis of the Pottasch decision decided that the City of New York was entitled to the priority claimed and itself made the necessary correction, stating that the court below should itself have modified and corrected the referee's decision. We shall deal in some detail with the ruling of the Pottasch case at a later point in this opinion.

The principle enunciated in the Jayrose decision in respect to Section 57, sub. k finds little support in subsequent authority. While 2 Collier on Bankruptcy,[1] para. 39.17 at pp. 1476–77, states: "The prevailing view seems to be that while a referee may reconsider al-

---

1. References to Collier throughout this opinion are to the 14th edition, 1941.

*lowed* claims at any time before the estate is closed, a creditor is not entitled to such reconsideration if his claim is *disallowed* in whole or in part, or if his asserted priority is denied.", there is cited as authority for this proposition, in addition to the Jayrose case, only In re Gouse, D.C.Pa.1934, 7 F.Supp. 106, and In re Tomlinson and Dye, Inc., D.C.Okl.1933, 3 F.Supp. 800–802. Collier draws a fine distinction between reconsideration of *disallowed* claims and reconsideration of *allowed* claims, suggesting that General Order 21(6) and Section 57, sub. k, look strongly toward authorizing the referee to reconsider the latter but not the former. See 3 Collier, para. 57.23, p. 304. But that authority goes on to say at the same page: "A recent case, [In re Cury, D.C.Va.1940, 34 F.Supp. 526], however, has with some consistency taken the contrary position and has held that the referee has the same power in this respect as in other cases.", i. e., to reconsider an order allowing or disallowing a claim on the same basis as any other order made by him. In our opinion in the Cury case the court correctly held on the identical principle stated in the Pottasch decision, that a referee in bankruptcy has the power on reconsideration to correct an order adjudicating a claim.

■■ One can readily perceive that the last sentence of General Order 21(6) was intended to deal with the rejection or expunging of claims on rehearing and from this, we think, has burgeoned the disastrous idea, cloudily advanced, that Section 57, sub. k, and General Order 21(6) may be availed of only to reduce or expunge claims on reconsideration or to deny priority thereto. The language of the Section and of the General Order does not warrant such a restricted view. The words employed in the Section and in the General Order permit a referee to reconsider the claims which had been disallowed in whole or in part or denied priority. There is no sound basis for a narrow construction of this remedial section of the Act. In conclusion on this phase of the instant case, we state that it must be borne in mind that Mora's claim was secured; and we find no authority which suggests that a secured claim may not be reconsidered by a referee if the facts warrant it. We point out parenthetically that, in respect to a secured claim, the petition or motion for reconsideration cannot be appropriately made by the trustee on behalf of the creditor.

■ Third and last, we are in complete agreement with what Judge Learned Hand aptly said in the Pottasch decision in respect to the powers of a referee who acts as a court and therefore has the same power as any other court to reconsider, amend, or vacate an order. Judge Hand stated: "[I]f a referee is a court at all, there is no warrant for saying because an appeal lies from his orders, that he has not the ancient and elementary power to reconsider those orders, nor the faintest reason why he should not do so. That power is of course limited in duration when there are terms of court, but in bankruptcy there are none. * * * Thus it seems to us a perversion * * * to seize upon the mere chance that appeals from referees are called 'reviews,' and use it to strip them of powers so common and so necessary to the reasonable exercise of their jurisdiction. Why it is desirable that their orders, *ruat coelum*, should be as immutable as the Twelve Tables, once the ink is dry, we cannot understand. * * * We hold that a referee has the same power over his orders as the District Judge has over his." See 79 F.2d at pages 616–617.[2]

---

2. In line with the view that the referee may reconsider an order adjudicating a claim or the status of a claim, see In re Inland Gas Corp., 6 Cir., 1951, 187 F.2d 813, 816; McCallum v. Stem, 6 Cir., 1928, 23 F.2d 491, 492. Cf. Biggs v. Mays, 8 Cir., 1942, 125 F.2d 693. See Pfister v. Northern Illinois Finance Corp., 1942, 317 U.S. 144, 149, 63 S. Ct. 133, 87 L.Ed. 146, where a referee's order fixing rental, granting a stay and directing a sale of real estate was held to have been reconsidered properly by the referee where there had been no change

In the instant case the Referee saw fit to correct two palpable errors in his order of February 9, 1952 allowing Mora's claim. We can perceive no reason why, in common sense or justice, the Referee should not be permitted to correct these mistakes. There has been no change of position and no one can be prejudiced by the corrections. See generally 3 Collier on Bankruptcy, para. 57.23, at pp. 308–310. The appeal is without merit. The order complained of is correct in all respects.

 We have dealt at length with the merits of the controversy in order to demonstrate that the order appealed from was just and proper. But did Castañer have the standing to appeal to this court or even to seek review in the court below of the Referee's order of May 24, 1955 amending Mora's claim and confirming the sale of the real estate to him? We think that he did not. As we have stated Castañer proffered $8,000 *plus* the general assets of the bankruptcy estate—assets over which he had not the slightest control or right of disposition—either to pay off Mora's secured claim, or as the purchase price of the real estate. Even if we assume that Castañer's proffer was intended by him as a bid for the real estate we can perceive no basis on which the Referee could treat it as a bid, even as an unsuccessful one.[3] It therefore cannot be asserted on any logical ground that Castañer lost a purchase by reason of the order of the Referee of which he now complains. To permit an insolvent bankrupt to unduly protract the settlement of his estate by useless appeals in his own name cannot serve the ends of justice or the purposes of the Bankruptcy Act. Castañer has not been aggrieved in any legal sense by the order of the Referee and we can conceive of no theory which could afford him standing to appeal to this court.

Accordingly, the appeal is dismissed.

---

of position, citing Wayne United Gas Co. v. Owens-Illinois Glass Co., 1937, 300 U.S. 131, 137, 57 S.Ct. 382, 81 L.Ed. 557.

3. A successful bidder deprived of his bid by a referee's order can maintain an appeal in his own name and does not have to seek review in the name of the trustee. See In re California Associated Products Co., 9 Cir., 1950, 183 F.2d 946. Such a position has a sound logical basis, for the trustee usually is in a position adversary to that of the purchaser.