**In the Matter of BEVERLY HILLS SE-CURITY INVESTMENTS, a California Corporation, Bankrupt.**

**No. B-5942.**

United States District Court
D. Arizona.

Aug. 7, 1964

Robert G. Mooreman, Phoenix, Ariz., for Co-Receiver Wallace Perry.

Donald V. Pearson, Evans, Kitchel & Jenckes, Phoenix, Ariz., for Special Class of Certificate Holders.

Stanley A. Furman, of Shutan, Feinerman & Furman, Beverly Hills, Cal., for Co-Receiver and Domiciliary Trustee Irving Sulmeyer.

ROGER T. FOLEY, District Judge.

The Petition for Review under submission here is entitled "PETITION FOR REVIEW OF ORDER OF REFEREE ABROTT, DATED APRIL 10, 1964 AND ALTERNATIVELY OF

738

JUDGMENT AND DECREE OF REF-
EREE JERMAN, DATED JUNE 27,
1963 AS MODIFIED BY ORDER OF
REFEREE ABROTT, DATED APRIL
10, 1964." Said Petition was filed with
the Clerk of the above-entitled Court on
April 20, 1964.

The prayer of the Petition is the fol-
lowing:

"WHEREFORE, petitioner prays
for review by a Judge of the Ref-
eree's order of April 10, 1964, and to
that end, a certificate on this petition
for review of the Referee's order, to-
gether with a statement of the ques-
tions presented, the findings and or-
ders thereon, the petition for review,
a transcript of the evidence or a
summary thereof, and all exhibits be
transmitted to the Clerk of this
Court in accordance with § 39a(8)
of the Bankruptcy Act (11 U.S.C. 67
a(8))."

Referee Abrott's Order of April 10,
1964, the object of the above mentioned
Petition for Review, recites:

"ORDERED, that the final account
and report of the Co-Receiver herein
be, and the same hereby is, approved.

"It is further ORDERED that
from the assets of the estate on hand,
said Co-Receiver, Wallace Perry, pay
to himself as commissions and fees,
which are fixed by the Act, the total
sum of $1,021.42 as Co-Receiver's
fees and all expenses are further ap-
proved as set forth in said account-
ing.

"It is further ORDERED that the
court appointed accountant, George
E. Lilley, is allowed the fees for ac-
counting in the amount of $1,000.00
and the Co-Receiver is directed to
pay said amount out of the balance
of the assets on hand.

"It is further ORDERED and di-
rected that the necessary court costs
are hereby authorized and approved
in the amount of $168.60.

"Without prejudice to any parties
of record, the court is not at this
time passing upon any petitions for
allowances of attorneys' fees and the
court further finds that there were
no objections to the petitions for at-
torneys' fees filed of record herein.

"IT IS FURTHER ORDERED
AND DIRECTED THAT THE
BALANCE OF FUNDS ON HAND
ARE PAYABLE FORTHWITH TO
THE DOMICILIARY TRUSTEE,
IRVING SULMEYER, FOR FUR-
THER ADMINISTRATION IN
THE DOMICILIARY ESTATE.
[Emphasis supplied]

"That upon the filing of a supple-
mental final account and report and
the cancelled vouchers showing pay-
ment and disbursements of all mon-
ies in said estate, pursuant to this
order, that nothing further remains
to be done in said estate and the Co-
Receivers are discharged, their
bonds cancelled, and the sureties
thereon released."

In compliance with § 39, sub. a(8) of
the Bankruptcy Act [11 U.S.C.A. § 67,
sub. a(8)], Referee Abrott did, on May
6, 1964, file with the Clerk of the Court
his Certificate on Petition for Review of
Referee's Order which recited, inter alia:

That on February 16, 1961, Bever-
ly Hills Security Investments, a Cali-
fornia Corporation, filed a voluntary
petition in bankruptcy in the United
States District Court for the South-
ern District of California and the
matter was referred to Ronald Walk-
er, Referee in Bankruptcy.

That on March 15, 1961, Irving
Sulmeyer was elected Trustee of
said estate.

That on August 7, 1961, Petition
for Appointment of Ancillary Re-
ceiver was filed and on August 8,
1961, Irving Sulmeyer and Wallace
Perry were appointed Ancillary Re-
ceivers.

That on June 27, 1963, Ancillary
Referee, Stanley A. Jerman, made an
Order with reference to the classi-
fication and priority of certain credi-
tors.

That on March 31, 1964, Irving Sulmeyer, Trustee, filed an application for the Reconsideration of Ancillary Referee Jerman's Order of June 27, 1963.

That on April 9, 1964, a hearing with respect to the receiver's account and reconsideration of Referee Jerman's Order was held before Referee Abrott.

That at said hearing Robert G. Mooreman, Esq. represented the Co-Receiver Wallace Perry. Donald V. Pearson appeared for Investors-certificate holders and Stanley A. Furman appeared for the Trustee and Co-Receiver.

Referee Abrott did not make a ruling with reference to Ancillary Referee Jerman's Order of June 27, 1963, but in regard thereto stated:

"The undersigned [Referee Abrott], after examining the file, is aware of the fact that no petition was filed to review Referee Jerman's Order. I do not feel that 'another' ancillary Referee has it within his power to affirm or reverse a prior order of an ancillary Referee.

"I am aware of the fact that it is possible that Referee Jerman did not have the authority to make his Order of June 27, 1963. The undersigned's [Referee Abrott's] Order of April 10, 1964 is in accordance with Section 2(20) of the Bankruptcy Act [11 U.S.C.A. § 11(20)], [quoted from as follows]

" 'That the jurisdiction of the ancillary court over a bankrupt's property which it takes into its custody shall not extend beyond preserving such property, and * * * reducing the property to money, paying therefrom such liens as the Court shall find valid and the expenses of ancillary administration, and transmitting the property or its proceeds to the Court of primary jurisdiction.'

"That on April 20, 1964, within the time allowed by law, the Certificate Holders filed their Petition for Review."

It is apparent that the "Certificate Holders" above referred to in Referee Abrott's Certificate on Petition for Review were members of the special class for whose benefit the Petition for Review of April 20, 1964, was filed. The said Petition for Review, in part, recites:

"II The said order sought to be reviewed approved the Final Account and Report of the Co-Receiver, and allowed fees to the Co-Receiver and accountant, approved Court costs in the amount of $168.60, and directed that the balance of the funds on hand and held by the Co-Receivers in Arizona should be paid to the domiciliary trustee in California for further administration in the domiciliary estate.

"III That petitioner is a member of a special class designated by the Referee in Bankruptcy, and special counsel appointed by the Referee in Bankruptcy for the purpose of representing the common interests of the class, who are persons aggrieved by said order of the Referee.

"IV Said order of which petitioner herein complains is erroneous in the following respects:

"a. Petitioner was not given an opportunity to be heard at the final meeting of creditors, at which time the order was entered, upon the question of distribution of assets in the hands of the Co-Receivers in Arizona, and the Referee made no findings of fact or conclusions of law with respect to said order which sub silentio reversed a judgment and decree entered by the Honorable Stanley A. Jerman, Referee in Bankruptcy, in the same cause entered on June 27, 1963.

"b. Reconsideration of an earlier judgment and decree of a Referee should not be permitted in the absence of extreme circumstances.

"c. The judgment and decree entered by Referee Jerman on June 27,

1963 is within the jurisdiction of a Referee when acting in connection with the administration of an ancillary estate and is in all respects correct and proper as a matter of law."

The portions of Referee Jerman's Order of June 27, 1963, affected by Referee Abrott's Order of April 10, 1964, are the following:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

"* * *

"2. That the Court further finds that the facts establish a fraudulent transaction by the bankrupt and against the special class of certificate holders, and under the general principles of law and equity, this Court hereby impresses a constructive trust in favor of the special class of certificate holders and against the funds which are collected by the Co-Receivers and which are attributable to the purchase and Court liquidation of real property directed in trust certificates held by the special class.

"3. That the Co-Receivers shall file with this Court an account and report of all funds collected by the Co-Receivers which are attributable to the purchase and court liquidation of real property described in trust certificates held by the special class; that said funds shall be charged with a proportionate share of the costs of administration, court costs, counsel fees to be fixed by this Court, and Referee's salary and expense fund; that upon approval of said accounting by this Court, and the allowance of said costs, fees and expenses, the balance of said funds shall be held in trust by the Co-Receivers for the benefit of the special class of certificate holders as hereinafter provided.

"4. That each member of the special class of trust certificate holders shall have Ninety (90) days after this Judgment within which

to file a special creditor's claim with this Court, such special claim to be in substantially the same form as the Special Creditor Proof of Claims as appended hereto;

"It is further ordered that the Co-Receivers shall pay only to members of the class who file said special creditor's claims and who thereby can be determined as creditors having advanced sums in reliance upon the representations of the bankrupt concerning real property in Maricopa County, Arizona; that said members of the class who file claims as aforesaid shall share in said trust fund pro rata with other members of the class who have filed said special claims; that said funds shall be distributed to said members in accordance with the further order of this Court when this estate is formally closed.

"5. It is further ordered and directed that all interested parties shall have an additional forty-five (45) days extension within which to review this decision, and that a copy of this decision shall be mailed to all members of the specific and special class of certificate holders, and to court appointed counsel Donald V. Pearson, and the Co-Receivers Irving Sulmeyer and Wallace Perry, and to Co-Receivers' attorney Robert G. Mooreman, and that this decision shall be effective as of the time of filing and notice to the counsel of record.

"Dated this 27 day of June, 1963.
STANLEY A. JERMAN
Referee in Bankruptcy."

From the "Referee's Certificate on Petition for Review of Referee's Order Allowing Ancillary Receiver's Account" filed May 6, 1964, with the Clerk of this Court, and from a comparison of Referee Jerman's Order of June 27, 1963, with Referee Abrott's Order of April 10, 1964, it is apparent that Referee Abrott's statement of "Question Presented" appearing on the third page of his said Certificate on Petition for Review is in-

correctly stated, the said incorrect statement being the following:

"The undersigned, Referee in Bankruptcy, did not make a ruling with reference to ancillary Referee Stanley A. Jerman's Order of June 27, 1963."

Regardless of the statement he there made in said Certificate on Petition for Review that "I do not feel that 'another' Ancillary Referee has it within his power to affirm or reverse a prior Order of an Ancillary Referee," Referee Abrott did make a ruling with reference to Referee Jerman's Order of June 27, 1963. He in effect reversed said Order of Referee Jerman of June 27, 1963, by that portion of his Order of April 10, 1964, which provides:

"It is further ORDERED and directed that the balance of funds on hand are payable forthwith to the Domiciliary Trustee, Irving Sulmeyer, for further administration in the domiciliary estate."

The above quoted portion of the Abrott Order of April 10, 1964, affected all the funds in the hands of the bankruptcy officers and included those funds against which Referee Jerman impressed a constructive trust in favor of the special class of certificate holders, Petitioner here. This in conflict with Paragraphs 3 and 4 of Referee Jerman's Order in that under Referee Abrott's Order, the balance of funds on hand collected by the Co-Receivers which are attributable to the purchase and Court liquidation of real property described in trust certificates held by the special class were directed to be payable "forthwith to the Domiciliary Trustee Irving Sulmeyer for further administration in the domiciliary estate."

However, Referee Abrott did not in his Order of April 10, 1964, rule contrary to, reverse or modify the finding and decree of Referee Jerman:

"That the Court further finds the facts establish a fraudulent transaction by the bankrupt and against the special class of certificate holders, and upon the general principles of law and equity, this Court hereby impresses a constructive trust in favor of the special class of certificate holders and against the funds which are collected by the Co-Receivers and which are attributable to the purchase and Court liquidation of real property described in trust certificates held by the special class."

Nor did Referee Abrott reverse or modify any other portion of Referee Jerman's Order which is to be found on pages 2 and 3 of Referee Jerman's Order in Paragraphs numbered 3, 4 and 5.

Ancillary Referee Jerman's Order of June 27, 1963, was not questioned by means of a petition for review, application for reconsideration, or otherwise attacked or objected to until March 31, 1964, the date that Irving Sulmeyer, Trustee, filed an Application for the Reconsideration of said Order of Referee Jerman. It therefore became final prior to the Application for Reconsideration.

This Court agrees with the statements of Chief Judge Ruiz-Nazario of the District of Puerto Rico in In the Matter of P. R. Railroad & Transport Co., Bankrupt, D.C., 201 F.Supp. 44. The following from the Court's opinion:

"The Referee based his aforesaid order, under review herein, on the July 14, 1960 amendment to Sec. 39, sub. c of the Bankruptcy Act (Title 11 U.S.C.A. § 67, sub. c), by which amendment Congress manifested its intention to foreclose the review of any order of the Referee unless requested within 10 days after the entry thereof, or within such extended time, as the Court upon petition filed within such ten day period may for cause shown allow, the order of the Referee, otherwise becoming final and unreviewable. (See legislative history of said amendment, in U. S. Code Congressional and Administrative News, 86th Congress Second Session, 1960, Vol. 2, pages 3194–3197)."

"By July 24, 1960, i. e. 10 days after said amendment came into effect, the Referee's order disallowing claim 621 became final and unreviewable, inasmuch as no review thereof had been sought or extension therefor requested by said date.

"As under the amendment, the court had lost all power to thereafter review the disallowance, much less could the Referee lawfully consider any motion for reconsideration such as that filed by claimants on August 24, 1961, which was the subject of the order under review herein.

"Therefore the Referee was correct in denying said claimants' motion for reconsideration in obedience to the Congressional mandate above referred to."

The above referred to Legislative History of the amendment follows:

"The Committee on the judiciary, to which was referred the bill (H. R. 6556) to amend subdivision c of section 39 of the Bankruptcy Act (11 U.S.C. 67c) so as to clarify time for review of orders of referees, having considered the same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.

### "PURPOSE

"The purpose of the bill, as amended, is to clarify the filing time for review of orders of referees in bankruptcy. * * *

"Section 39c of the Bankruptcy Act (11 U.S.C. 67c) now provides:

"c. A person aggrieved by an order of a referee may, within ten days after the entry thereof, or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Upon application of any party in in-

terest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest.

"A failure to file a petition for review of a referee's order within the prescribed 10 days after the entry of the order has generally been held, unless an extension is granted, to be fatal to the petition for review.

"The Supreme Court, however, has held that a bankruptcy court may, in its discretion, grant an extension even after the expiration of the 10-day period. The Court held (Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 153 [63 S.Ct. 133, 139, 87 L.Ed. 146] (1942)) that although 39c limits an aggrieved party in seeking review as a matter of right after the 10-day period, it places no limitation upon the discretion of the bankruptcy court to entertain a petition for review after the expiration of that period.

"There is now uncertainty as to the finality of a referee's order under this doctrine that a bankruptcy court may entertain an untimely petition for review even in the absence of an extension of time. The purpose of the bill is to fix a definite period of time within which an application for review must be filed.

"The bill amends section 39c so as to make it clear that a petition for review must be filed within the prescribed 10-day period or within such extended time as the court may allow upon petition for extension itself filed within such 10-day period.

"The amendment recommended by the Administrative Office of the U. S. Courts to the bill as passed by the House of Representatives provides further, for the purposes of clarification, that unless the person aggrieved shall petition for review of such order within such 10-day period, or an extension thereof, the order of the referee shall become **final.**

"The committee believes that the bill as passed by the House of Representatives and as amended for purposes of clarification, as recommended by the Administrative Office of the U. S. Courts, is meritorious and recommends it favorably.

\* \* \* \* \* \*

"Subdivision c was added to section 39 by the Chandler Act of 1938 for the purpose of clearly outlining the procedure to be followed in obtaining a review of a referee's order, and in the interest of certainty and uniformity. Prior to the Chandler Act, the right to have orders of the referee reviewed by the judge was governed by General Order 27. Subdivision c incorporated into the act the essence of former General Order 27, which has been abrogated. It also was intended to remedy a previous deficiency in both the Bankruptcy Act and the general orders in that a definite period of 10 days has been provided as the time in which to file a petition for review. General Order 27 contained no time limitation, though local rules in various districts prescribed a time within which the application must be filed. (See 'Collier on Bankruptcy,' 14th ed. vol. 2, sec. 39.16. See also 'Remington on Bankruptcy,' vol. 8, sec. 3406).

"Section 39c stipulates 'ten days after the entry thereof' as the period within which a petition for review of a referee's order must be filed. Generally the failure to file within this time, unless an extension is granted, is fatal to the petition for review. However, in In re Steinberg ((S.D.Calif.1956) 138 F.Supp. 462), the court held that the expiration of the 10-day period does not preclude the court from entertaining a petition for review, having power to exercise its own discretion in the matter. The effect of the expiration of the 10-day period is only that a petitioner cannot have a review as a matter of right. (See 'Collier on Bank-

ruptcy,' 14th ed. vol. 2, sec. 39.20, and the other cases cited under note 8.)

"Uncertainty as to the finality of a referee's order now exists because of the holdings of some courts that a bankruptcy court may entertain an untimely petition for review, even in the absence of an extension of time. In view of this an amendment to section 39c is needed that will fix a definite period of time within which an application for review must be filed. The bill would amend section 39c so as to make it clear that the petition for review must be filed within the prescribed 10-day period or within such extended time as the court may allow upon petition for extension filed within such 10-day period. \* \* \*." U.S.Code Congressional and Administrative News, p. 3194.

It seems apparent that it was the intent of Congress in the enactment of the July 14, 1960, amendment to Title 11 U.S.C.A. § 67, sub. c to remove then existing uncertainties as to the finality of a referee's order and this Court respectfully submits that the ruling of our Court of Appeals in Smith v. Hill, 9 Cir., 317 F.2d 539, 541, [1–3], overlooked this congressional intent declared by the insertion of the following sentence in said sub-paragraph c:

"Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final."

An Order becoming final under the provisions of the July 14, 1960 amendment must be considered as final. Entertaining applications for reconsideration of such an Order which has become final under the said amendment amounts to a frustration of the clear intent of Congress shown by the above quoted Legislative History of said amendment.

In any event, the situation here differs from that with which our Court of Appeals dealt in Smith v. Hill, supra. In

Smith v. Hill, the Court of Appeals stated, p. 541 of 317 F.2d:

"[1–3] Appellants failed to file a petition for review within ten days of the entry of the referee's order directing surrender of the property and as noted instead filed a petition to reclaim. As a result, contends appellee, the order became final, and appellants must be held to have consented to the summary jurisdiction of the bankruptcy court. But appellants specifically asserted in their petition to reclaim that the order requiring the state court receiver to surrender the property 'was inadvertently made and erroneous.' * * * The referee entertained the challenge to his authority, heard extensive argument, and decided the question adversely to appellants. The petition to reclaim was, in effect, a request for reconsideration of the referee's prior order requiring surrender of the property. The referee undertook to re-examine his earlier decision—as, in the circumstances of this case, he had the power to do. * * * "

In the Hill case the referee making the order undertook to review his own order. Here Referee Abrott reviewed, reconsidered and reversed the Order of Referee Jerman.

The entertaining by Referee Abrott of Trustee Irving Sulmeyer's "Application by Trustee for Reconsideration of Referee's Order" was in direct conflict with the July 14, 1960 amendment to 11 U.S.C.A. § 67, sub. c and conflicted with the congressional purpose of the enactment of such an amendment as indicated by excerpts from the Legislative History above quoted.

In accepting and acting upon Trustee Irving Sulmeyer's Application for Reconsideration, filed March 31, 1964, and in effect by reason of such "Application for Reconsideration," Referee Abrott did not reconsider but reviewed Referee Jerman's Order of June 27, 1963. The use of the word "reconsider" in the Sulmeyer

Application instead of the word "review" could not confer upon Referee Abrott power which the July 14, 1960 amendment to § 39, sub. c of the Bankruptcy Act (11 U.S.C.A. § 67, sub. c) denied. Under the circumstances shown here, Referee Jerman's Order had become final months prior to the filing of the Sulmeyer Application. The terms "reconsider" and "review" are not synonymous. No one could reconsider Referee Jerman's Order but Referee Jerman, the author of it. This is not a case such as Judge Learned Hand considered in In re Pottasch Bros. Co., 2 Cir., 79 F.2d 613. There, as stated by Judge Hand, "[t]he only question therefore is whether the referee had power to amend it." Then, continuing, he said, on p. 616:

"[4] There is indeed considerable authority for the opinion that a referee has no such power. So far as we can find, it had its origin in Judge McPherson's ruling in Re Greek Manufacturing Co. [D.C. 1908] 164 F. 211, and arose from what with deference seems to us a mistaken understanding of General Order 27 (11 U.S.C.A. following section 53). That order governs petitions to the District Court to review orders of referees, and it is indeed amply well settled that they may not be reviewed in any other way. Many of the authorities relied upon in support of the doctrine merely decide as much, and they are altogether beside the point, unless one assumes that the reconsideration by a court of its own judgments or decrees is a review within the intent of the General Order, which is the very question at issue. Nobody to-day would think of an order of the court itself vacating a judgment as an appeal, whatever were the archaic notions about it; and the General Order only lays down the procedure upon appeals to the District Court. This is apparent from the very form of the order which speaks of 'review by the judge'; it fills a gap in the statute otherwise unprovided for, except as

may be implied from section 39a(5), Bankr.Act (11 U.S.C.A. § 67(a) (5). On the other hand, if a referee is a court at all, there is no warrant for saying because an appeal lies from his orders, that he has not the ancient and elementary power to reconsider those orders, nor the faintest reason why he should not do so. That power is of course limited in duration when there are terms of court, but in bankruptcy there are none. * * * Thus it seems to us a perversion * * * to seize upon the mere chance that appeals from referees were called 'reviews,' and use it to strip them of powers so common and so necessary to the reasonable exercise of their jurisdiction. Why it is desirable that their orders, ruat coelum, should be as immutable as the Twelve Tables, once the ink is dry, we cannot understand. * * *

"We hold that a referee has the same power over his orders as the District Judge has over his. * * "

Referee Jerman might have reconsidered his Order if, upon it occurring to him later, it was not exactly as he intended it to be, that inadvertently something was included which should not have been and that some amendment was necessary to carry out the purposes he had in mind when he entered the Order.

The Ninth Circuit case of Smith v. Hill, supra, is distinguishable from the situation we have here. There, on p. 541 of 317 F.2d, the opinion recites:

"The petition to reclaim was, in effect, a request for reconsideration of the referee's prior order requiring surrender of the property. The referee undertook to re-examine his earlier decision—as, in the circumstances of this case, he had the power to do."

Here, Referee Abrott undertook to examine and review the earlier decision of Referee Jerman.

However, regardless of the propriety of the Application for Reconsideration which was entertained by Referee Abrott, it is the opinion of this Court that that portion of the Order of Referee Abrott of April 10, 1964, which is in conflict with the Judgment and Decree made and entered by Referee Jerman under date of June 27, 1963, in regard to the disposition of funds collected by the Co-Receivers which are attributable to the purchase and Court liquidation of real property described in trust certificates held by the special class, should be vacated.

The only ground urged by Trustee Sulmeyer to support his Application for Reconsideration of Referee Jerman's Order is a plea of lack of jurisdiction in that, as he says, Referee Jerman did not have jurisdiction to find a fraudulent transaction or to impress a constructive trust in favor of the special class of creditors by reason of the fact that he thereby exceeded the jurisdiction of the Ancillary Bankruptcy Court defined by § 2, sub. a(20) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(20). Referee Abrott went along with this contention and erroneously treated the funds or property claimed by the members of the special class as property of the bankrupt.

Sec. 2(20) of the Bankruptcy Act, 11 U.S.C.A. § 11 sub. a(20), upon which Referee Abrott relies to support the Order here under review, has no application. There has been no determination called to the attention of this Court that the funds ordered to be held in trust by the Co-Receivers for the benefit of the petitioning certificate holders were at any time the bankrupt's property. To the contrary, Referee Jerman held that the certificate holders were the true owners of the fund. Referee Jerman found and concluded, Paragraph 2 of his Judgment and Decree, that:

"The facts establish a fraudulent transaction by the bankrupt and against the special class of certificate holders, and under the general principles of law and equity, this Court hereby impresses a constructive trust in favor of the special class of

certificate holders and against the funds which are collected by the Co-Receivers and which are attributable to the purchase and Court liquidation of real property described in trust certificates held by the special class."

Referee Abrott evidently overlooked the fact that Referee Jerman had the authority to and in fact did determine the ownership of the property or funds claimed by the special class of creditors.

In Butler v. Ellis, 45 F.2d 951, 952, 953, Circuit Judge Parker, speaking for the 4th Circuit, stated:

"It is unthinkable that, in authorizing the district courts to exercise ancillary jurisdiction in aid of a receiver or trustee in bankruptcy appointed in another jurisdiction, it was intended that these courts should do no more than seize property designated by the officer of the foreign court and, without hearing those who adversely claim the property or an interest therein, turn it over to be administered in a jurisdiction hundreds of miles removed from the residence of the claimants. The first duty of a court is to do justice; and it is manifest that, when through its receiver it lays its hands on property, and thus renders it impossible for any other court to determine the ownership thereof or the rights of property therein, justice requires that it should itself hear and pass upon the claims of those who assert that the property belongs to them and not to the bankrupt, * * *."

By means of Paragraph numbered 2 of the Judgment and Decree, Referee Jerman did in effect find that the funds which were and which may hereafter be collected by the Receivers, or other officers of the Bankruptcy Court, and which are attributable to the purchase and Court liquidation of real property described in trust certificates held by the "special class" were not the property of the bankrupt.

Collier Bankruptcy Manual, 2d Ed., p. 965, § 70.17, PROPERTY HELD BY BANKRUPT AS TRUSTEE:

"The rule is elementary that a trustee in bankruptcy succeeds only to the title and rights in the property that the debtor possessed, but armed, of course, with the special rights and powers conferred upon the trustee by the Act itself. Therefore, where the bankrupt or debtor was in the possession of property impressed with a trust which is valid under the terms of the Act, the bankruptcy or reorganization trustee generally holds such property subject to the outstanding interest of the beneficiaries. When it appears that the bankrupt was only a trustee and had no beneficial interest in or claim against the property, even though he held the legal title thereto which passed to the bankruptcy trustee, the court should turn the property over to its true owners where possible."

Other than the above discussed claim of lack of jurisdiction, this Court finds no attack upon the findings and conclusions of Referee Jerman set forth in Paragraph 2 of his Judgment and Decree of June 27, 1963, wherein in effect he did impress a trust in favor of the special class of certificate holders against the funds which were and are being collected by the Co-Receivers and attributable to the purchase and Court liquidation of the real property described in trust certificates.

There is nothing in this record which would support a conclusion by this Court that the findings of Referee Jerman, set forth in Paragraph 2 of his Judgment and Decree, or of any other finding made by him, are clearly erroneous. Therefore, this Court will not undertake to set aside any of such findings.

An understanding of the matters presented to and considered by Referee Jerman which resulted in his Judgment and Decree of June 27, 1963, may be obtained from the statements of Mr. Donald V.

Pearson, Special Counsel for the class of certificate holders, Petitioner here, and other counsel, contained in the transcript of proceedings before this Court beginning May 19, 1964.

Now, therefore, it is hereby ordered, adjudged and decreed that the Order of Referee Abrott, filed with the Clerk of the above entitled Court on April 10, 1964, insofar as it is in conflict with the Judgment and Decree made and entered by Referee Jerman under date of June 27, 1963, be, and the same hereby is, vacated and set aside and declared of no effect; and

It is further ordered and adjudged that Irving Sulmeyer, as Domiciliary Trustee, and Irving Sulmeyer and Wallace Perry, as Co-Receivers, and each of them, and all other officers of the Bankruptcy Court having any powers or duties in regard to this bankruptcy proceeding, Beverly Hills Security Investments, a California Corporation, Bankrupt, be, and each of them hereby is, directed to fully comply with and carry out and put into effect all of the provisions of the Judgment and Decree of Referee Jerman of June 27, 1963, to the end that the balance of "funds collected by the Co-Receivers which are attributable to the purchase and Court liquidation of real property described in trust certificates held by the special class" be held in trust by the Co-Receivers for the benefit of the special class of certificate holders; and that said funds shall be distributed to members of the "special class" in accordance with the provisions as directed by Referee Jerman.

It Is Further Ordered, Adjudged and Decreed that the Court, not having affirmed the Order of Referee Abrott of April 10, 1964, finds it unnecessary to consider the Alternative Petition for Review filed on April 20, 1964, with the Petition for Review above considered.

The Court retains jurisdiction of all matters having to do with this bankruptcy proceeding and particularly the Petition for Review of Referee Abrott's Order of April 10, 1964.