372 F.2d 235
 In the Matter of BRENDAN REILLY ASSOCIATES, INC., Debtor.
CAMBRIDGE FACTORS, Creditor-Appellant, Quintino TESCIUBA,
doing business as Mutual Trade Enterprises
Company, Appellee.
 No. 294, Docket 30924.
 United States Court of Appeals Second Circuit.
 Argued Jan. 12, 1967.
Decided Jan. 30, 1967.
 
 Howard C. Amron, of Bendes, Stark & Amron, New York City, for creditor-appellant.
 Anthony B. Cataldo, New York City, for appellee.
 Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge.
 
 
 1
 This bankruptcy appeal epitomizes what Mr. Justice Holmes meant when he described insolvency proceedings as 'bellum omnium contra omnes.' Fogg v. Supreme Lodge of the Order of the Golden Lion, 156 Mass. 431, 433, 31 N.E. 289, 290 (1892). The contestants here are Quintino Tesciuba, doing business as Mutual Trade Enterprises Company, a supplier of marble, and Cambridge Factors, a financing agent. Both are creditors of Brendan Reilly Associates, Incorporated, a bankrupt manufacturer of furniture. Operating under agreements dated February 19, 1963, Tesciuba supplied Brendan Reilly with marble on consignment and Cambridge Factors, which made advances to Brendan Reilly secured by its accounts receivable and a lien on its inventory, paid Tesciuba for the marble as Brendan Reilly used it. Apparently this arrangement worked satisfactorily until March 6, 1964 when Brendan Reilly filed a petition under chapter XI of the Bankruptcy Act, 11 U.S.C. 701-799. At this time, Brendan Reilly had approximately $17,000 worth of Tesciuba's marble on its premises. On March 10, Brendan Reilly was appointed debtor in possession and two days later Referee Edward J. Ryan approved a new factoring agreement.
 
 
 2
 Before very long, Tesciuba discovered that the debtor was using the marble and that Cambridge was remitting nothing. Consequently, on April 2, Tesciuba moved against the debtor for: an accounting of and payment for any marble used after April 1; reclamation of any unused marble unless security was provided; payment of $1,721 for marble used. He also moved against Cambridge in the event that the debtor defaulted on payment of the $1,721. After an adjournment and negotiations, Tesciuba and Brendan Reilly agreed to a stipulation dated April 21, whereby; the debtor would pay Tesciuba for marble used after April 15 out of the proceeds of a sale to be conducted for the debtor by Dean Furniture; the debtor would pay Tesciuba $1,101.49 in eleven weekly installments beginning May 1 for marble used from the date of filing the petition to April 15; the debtor would pay Tesciuba $1,200 on April 22 for the balance due on marble used since the petition date; Tesciuba would be allowed to pick up all unused marble within seven days; Tesciuba would adjourn the reclamation proceedings from April 24 to May 1 and would withdraw the proceeding upon the debtor's performance of the conditions of the stipulation.
 
 
 3
 When Tesciuba did not receive the $1,200 on April 22, he gave notice that the reclamation proceedings would not be adjourned. Neither the debtor nor Cambridge appeared at the hearing on April 24 and on April 29 the referee entered a default. He found that the debtor had certain of Tesciuba's marble in its possession, had used the marble after filing the petition but had refused to pay for it and had included the value of the marble in the sale price to customers thereby creating accounts receivable which were assigned to Cambridge. Therefore, the referee ordered the debtor to transfer all unused marble to Tescibua, to pay Tesciuba the $1,721 (on default of which Cambridge would pay the sum out of accounts receivable) and to account for all marble used on or after April 1 and pay any sum due (on default of which Cambridge would account and pay the sum due). On May 14, the referee certified under 41 of the Bankruptcy Act, 11 U.S.C. 69, that neither the debtor nor Cambridge had complied with the order and on June 5 Judge Harold R. Tyler adjudged the debtor in contempt. He provided that the contempt would be purged if the debtor paid the #1,721 that day and returned the marble by June 9. Judge Tyler further ordered that all other parties affected by the April 29 order certify to the referee their compliance with the order by June 11. The referee certified on June 24 that the marble had been returned but that neither the debtor nor Cambridge had paid the $1,721 and that whether the accounting had been complied with had to await determination in a hearing. On June 29, Judge Tyler held the debtor and Cambridge in contempt for failure to pay the $1,721 and fined each $1,000. Upon payment of $1,721 by Cambridge, the court purged Cambridge of contempt on July 20 and reduced the debtor's fine to $250. Judge Tyler concluded his order by saying 'All of the above shall be without prejudice to the balance of the proceedings hereunder to take place before the Hon. Edward J. Ryan.'
 
 
 4
 On August 8, Cambridge moved before the referee under Fed.R.Civ.P. 60[1] to vacate and set aside its default of April 29. This motion was denied on December 14 and a timely petition to review was filed but the parties before the referee agreed to hold it in abeyance until the conclusion of the proceedings before the referee which has not yet occurred.[2] Some two years after the default Cambridge again moved to open the default, and on February 7, 1966 the referee denied this motion because as he stated:
 
 
 5
 'I do feel * * * that I have no right, without Judge Tyler's permission to fail to obey the mandate of Judge Tyler, contained in his order, in which he directed me to take an accounting.'
 
 
 6
 Cambridge then brought a motion to show cause why
 
 
 7
 'an order should not be made herein permitting Hon. Edward J. Ryan, Referee in Bankruptcy, to consider a motion made on behalf of Cambridge Factors to vacate and set aside an order * * * dated April 29, 1964 * * *'
 
 
 8
 On June 15, the parties proceeded to the chambers of Judge Tyler who declined a reference of the motion. On June 28, Judge Sugarman denied the motion because:
 
 
 9
 'Movant chose to permit the entry of the order of April 29, 1964 by default and has complied in large measure, albeit under penalty of contempt, with that order.'
 
 
 10
 On August 2, Judge Sugarman denied a motion to reargue.
 
 
 11
 In its Notice of Appeal filed September 29, 1966, Cambridge states that it is appealing from Judge Sugarman's August 2, 1966 order denying reargument. The appeal appears to be untimely (11 U.S.C. 48); however, in its Statement Under Rule 15(b), Cambridge says that an order extending time to appeal was granted. (We have not seen this but it is listed on the Bankruptcy docket.) Nevertheless, the appeal must be dismissed. An order denying reargument is not appealable. Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146 (1942); Hawkins v. Lindsley, 327 F.2d 356 (2d Cir. 1964).
 
 
 12
 Even if the order denying reargument were appealable, or an appeal had been taken from the order of June 28, 1966, or this appeal were treated as an application for mandamus, Cambridge would be in no better position.[3]
 
 
 13
 At the outset, it should be emphasized that by failing to file a petition for review 'within ten days after the entry' of the order of April 29 or 'within such extended time as the court upon petition filed within such ten day period may for cause shown allow,'[4] as required by 39(c), 11 U.S.C. 67(c), Cambridge waived any direct attack upon the order of default. Although Cambridge describes its motion before Judge Sugarman as one to direct the referee to consider a motion to vacate, it is in essence a petition to review the referee's refusal to vacate an order. It has been long settled that a referee has 'the ancient and 'That power is of course limited in ders. 'That power is of course limited in duration where there are terms of court, but in bankruptcy there are none.' In re Pottasch Bros. Inc., 79 F.2d 613, 616, 101 A.L.R. 1182 (2d Cir. 1935). See Smith v. Hill, 317 F.2d 539 (9th Cir. 1963); Castaner v. Mora, 234 F.2d 710 (5th Cir. 1956); 2 Collier on Bankruptcy PP38.09(3), 39.17 (14th ed. 1966). Although it is generally agreed that the referee has discretion to reconsider his orders, there has been some recent dissent. Some district courts have reasoned that the 1960 amendments to 39(c), which provided that extensions must be applied for within ten days and that 'Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final', see n. 4 supra, abrogated the referee's discretion to reconsider his orders. In re Beverly Hills Security Investments, supra n. 4; In re P.R.R.R. and Transport Co., 201 F.Supp. 44 (D.P.R.1962). This reasoning appears unsound because 39(c) does not treat the question of reconsideration by the referee but rather the very different matter of review by the district judge. Surely, the 'ancient and elementary power to reconsider' orders (In re Pottasch Bros. Inc., supra, 79 F.2d at 616), was not nullified by the 1960 amendments. See In re Watkins, 197 F.Supp. 500 (W.D.Va.1961), explicitly rejecting the abrogation argument. See also Smith v. Hill, supra, which does not explicitly deal with the issue but holding that a referee has power to reconsider his orders, either ignores or implicitly rejects the argument.
 
 
 14
 It may be noted also that whether or not and in what circumstances the district court can review his decision not to act is perhaps not entirely clear. For example, Indemnity Ins. Co. of No. America v. Reisley, 153 F.2d 296 (2d Cir. 1945), cert. denied 328 U.S. 857, 66 S.Ct. 1349, 90 L.Ed. 1629 (1946), held that the referee's denial of a petition for a reconsideration of an earlier order was appealable for an abuse of discretion There the referee had considered the merits. Similarly, this court has ruled that a district court decision granting, Grand Union Equipment Co. v. Lippner, 167 F.2d 958 (2d Cir. 1948), or refusing, In re Schreiber, 23 F.2d 428 (2d Cir. 1928), modification of an order in bankruptcy after reaching the merits is reviewable for an abuse of discretion. On the other hand, it is held that courts cannot review a referee's refusal to reconsider and reargue, In re Silver, 199 F.Supp. 836 (S.D.N.Y.1961), or to rehear, Matter of American Textile Printers Co., Inc., 152 F.Supp. 901 (D.N.J.1957), where he has declined to reach the merits. Likewise, a bankruptcy court's refusal to grant reargument without ruling on the merits is not reviewable. Klein's Outlet, Inc. v. Lipton, 181 F.2d 713, 714 (2d Cir. 1950). Speaking of a bankruptcy court's denial, the Third Circuit stated 'the decision whether or not to reopen was within the sound discretion of the trial court and at least ordinarily not appealable.' In re L. F. Grammes & Sons, Inc., 324 F.2d 675, 677 (3d Cir. 1963). Applying these rules, we conclude that Referee Ryan's decision was not reviewable by Judge Sugarman. In any case, the decision is sustainable on the merits.
 
 
 15
 Regardless of whether or not Referee Ryan was powerless to exercise his discretion because of Judge Tyler's June 5 order that all parties comply with the default order, his June 29 recitation that compliance with the accounting awaited a hearing and his July 20 statement that the proceedings should continue before the referee, it does not appear from the papers that any grounds were presented to the referee on which he could, within his discretion, vacate the default. Cambridge's claim that the default was inadvertent is without merit. Although it was not a party to the stipulation, Cambridge has not contested Tesciuba's assertion that Cambridge was in telephonic communication with the debtor's attorney through the negotiations and that it promised to pay the $1,200.[5] And, as a named party in the reclamation petition and as factor for the debtor, Cambridge should be held to knowledge that the $1,200 had not been paid and that, therefore, the reclamation proceeding would go forth. Moreover, it was not beyond the referee's discretion to order an accounting by Cambridge upon the debtor's default even though the motion of April 2 only requested an accounting from the debtor because of the referee's finding that Cambridge had been assigned accounts receivable on sales including Tesciuba's marble.
 
 
 16
 Finally, the reclamation proceeding is a controversy in a proceeding in bankruptcy, a contest within the principal bankruptcy case, and interlocutory orders in such a reclamation controversy are not appealable. 11 U.S.C. 47. Hillcrest Lumber Co. v. Terminal Factors Inc., 281 F.2d 323 (2d Cir. 1960). Here no final determination has been had on the accounting ordered in the reclamation proceeding.
 
 
 17
 The appeal is dismissed. Treating this appeal as an application for mandamus, the application is denied.
 
 
 
 [1]
 For a discussion of the limited applicability of Rule 60(b) in bankruptcy proceedings, see 7 Moore, Federal Practice P60.18(7) (2d ed. 1966); 1 Collier on Bankruptcy P2.12(2.1) (14th ed. 1966); Grand Union Equipment Co. v. Lippner, 167 F.2d 958 (2d Cir. 1948)
 
 
 [2]
 It is not necessary to decide whether such an agreement can validly extend the time for review
 
 
 [3]
 Brendan Reilly was adjudicated a bankrupt on October 13, 1964. This fact, however, is not relevant to the issue on appeal because the same rules apply under Ch. XI and straight bankruptcy. See 8 Collier on Bankruptcy P3.30(4) (14th ed. 1966)
 
 
 [4]
 It should be noted that previously there was no such ten day time limitation on obtaining an extension. Pfister v. Northern Illinois Finance Corp., supra. The 1960 amendments to 39(c) changed this. See H.R. No. 1689, 86th Cong.2d Sess. (1960). See also In re Beverly Hills Security Investments, 233 F.Supp. 737 (D.Ariz.1964)
 
 
 [5]
 In his Memorandum on Motion of Cambridge to Re-argue, Tesciuba states that Cambridge paid the $1,200 to the debtor