In the Matter of **METER MAID INDUSTRIES, INC.**, Bankrupt Debtor.

**B & G LIMITED**, Appellant,

v.

Edward H. **LEVIN**, Trustee, Appellee.

No. 72–1144

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 16, 1972.

---

*[1]   Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Robert R. Frank, Frank, Strelkow & Marx, Miami Beach, Fla., for appellant.

John L. Britton, Robert W. Rust, U. S. Attys., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Tax. Div., Dept. of Justice, Meyer Rothwacks, Crombie J. D. Garrett, Charles E. Anderson, Attys., Tax Division, Department of Justice, Washington, D. C., for appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

B & G Limited petitioned the referee in bankruptcy for reclamation of shares of capital stock and other papers from Edward H. Levin, trustee for the bankrupt Meter Maid Industries, Inc. On August 5, 1971 the referee entered an order granting the reclamation and directing that Levin turn over the property in issue to B & G within ten days. On August 10 the Internal Revenue Service served a notice of levy on the trustee advising him in effect that property in his possession owing to Stuart Greenfield, the sole shareholder of B & G Limited, or his wife, must be delivered to the IRS in satisfaction of taxes owed by the Greenfields. In a quandary about the proper party to whom he should deliver the reclaimed property, Levin returned to the referee on August 26 with a petition for instructions. The referee modified his earlier order so as to require

Levin to turn over to IRS all of Greenfield's property in his possession. The District Court affirmed the referee's order and dismissed the petition for review, and B & G appeals. We affirm.

B & G contends that the property is not subject to levy of the IRS because *in custodia legis*. The doctrine of *custodia legis* refers to the power of the bankruptcy court to assume complete control over the assets of a bankrupt estate and to prevent any action that would tend to embarrass the court in the equitable distribution of the estate. 1 Collier on Bankruptcy, ¶ 2.06 (14th ed. 1971). Property *in custodia legis* is not attachable because of "the desirability of avoiding a clash between judicial jurisdictions which would result from any attempt to use the process of one to seize assets in the control of another judicial authority. Such collisions are especially pronounced where the judicial departments belong to different sovereignties, as in the case of garnishment process issuing out of a state court to attach property in the hands of a receiver of the federal Bankruptcy Court." In re Quakertown Shopping Center, Inc., 366 F.2d 95, 97–98 (3d Cir. 1966). Accordingly, it follows that when authority for the law's custody and for the Internal Revenue's levy derive from the same source, with no potential clash between jurisdictions, the doctrine against attachment does not prevail.

In *Quakertown* the IRS served notice of levy against the receiver in a Chapter XI bankruptcy to attach property owing to a claimant of the debtor, and the claimant-taxpayer objected. After determining that the power to levy is conferred on the IRS by § 6331 of the Internal Revenue Code and is a summary administrative remedy of self-help designed to provide a prompt and convenient method for satisfying delinquent tax claims, the court concluded:

> The United States here was simply exercising its right of self-help expressly granted to it by the same authority which created the Bankruptcy

Court and authorized Chapter XI proceedings. . . . [T]he present case is not one in which there is a judicial attachment issuing out of some other court, seeking to seize property in the possession of the Bankruptcy Court. None of the evils of collision between the judicial process of one court and another court's authority over the funds can arise here.

*Id.* at 97–98. Consequently it held the levy valid and enforceable. We perceive no distinction between *Quakertown* and the case at hand and therefore find the doctrine of *custodia legis* inapplicable as a bar to the levy.

Relying on § 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c), B & G maintains alternatively that pursuant to the referee's August 5 order it is entitled to possession of the papers held by the trustee because the referee lacked jurisdiction to enter a further order regarding that property. Section 39(c) provides that an order of a referee shall become final after ten days unless a person aggrieved by it shall petition for review within the ten day period or any extension thereof. We have found § 39(c) "clearly inelastic in its command that some paper (either a petition for review itself or a petition to extend the filing time for a petition for review) be filed within ten days of the issuance of the order complained of." St. Regis Paper Co. v. Jackson, 369 F.2d 136, 139 (5th Cir. 1966). Since no qualifying paper was timely filed, B & G's argument runs, the referee's August 5 order became final and his later order concerning the same subject matter was a nullity for lack of jurisdictional authority. Two courts have agreed with appellant's position. *See* In re Beverly Hills Security Investments, 233 F.Supp. 737 (D.Ariz.1964); In re P.R.R.R. & Transport Co., 201 F. Supp. 44 (D.P.R.1962).

We do not quibble with our previously expressed view of the unyielding nature of the ten-day limit imposed by § 39(c), but we would have to strain beyond our powers to hear any clarion call for the statute's applicability

in this situation. Section 39(c) speaks of time limits for review "by a judge" for purposes of determining when a referee's order is final and such review thus precluded. Apart from review by a judge, a referee has the power to reconsider his orders. "That power is of course limited in duration when there are terms of court, but in bankruptcy there are none." In re Pottasch Bros. Co., 79 F.2d 613, 616 (2d Cir. 1935). *See* Mavity v. Associates Discount Corp., 320 F.2d 133 (5th Cir. 1963), cert. denied, 376 U.S. 920, 84 S.Ct. 677, 11 L.Ed.2d 615 (1964); 2 Collier on Bankruptcy, ¶¶ 38.09 [3], 39.17 (14th ed. 1971). We noted the difference, in terms of § 39(c), between review by a judge and reconsideration by a referee in St. Regis Paper Co. v. Jackson, *supra*, at 138 n. 3. There we distinguished Smith v. Hill, 317 F.2d 539 (9th Cir. 1963), in which a referee's reconsideration of an order entered more than ten days prior was found within his power, by pointing out that "[s]ection 39c treats specifically only the question of vertical review by a district court, and not horizontal reconsideration by a referee."

The limited sphere of operation of § 39(c) was more sharply circumscribed in In re Brendan Reilly Associates, Inc., 372 F.2d 235 (2d Cir. 1967), where it was said:

> Some district courts have reasoned that the 1960 amendments to § 39(c), which provided that extensions must be applied for within ten days and that "Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final", . . . abrogated the referee's discretion to reconsider his orders. In re Beverly Hills Security Investments, supra n. 4; In re P.R.R.R. and Transport Co., 201 F. Supp. 44 (D.P.R.1962). This reasoning appears unsound because § 39(c) does not treat the question of reconsideration by the referee but rather the very different matter of review by the district judge. Surely, the

"ancient and elementary power to reconsider" orders (In re Pottasch Bros., Inc., supra, 79 F.2d at 616), was not nullified by the 1960 amendments. See In re Watkins, 197 F.Supp. 500 (W.D. Va.1961), explicitly rejecting the abrogation argument. See also Smith v. Hill, supra, which does not explicitly deal with the issue but holding that a referee has power to reconsider his orders, either ignores or implicitly rejects the argument.

*Id.* at 239.

 We view the referee's second order modifying his August 5 decree as a reconsideration by the referee and not as a "review" within the contemplation of § 39(c). That statute imposes no limitations on the referee's traditional power to reconsider his orders. The later order therefore remains standing as a valid exercise of the referee's authority.

Affirmed.