In re Robert G. WILSON and Pamela C. Wilson, Debtors.

Irving E. GENNET, Trustee, Plaintiff,

v.

Arthur HARTMAN; Norman Scott; Expeditions Unlimited, Inc.; Anderson Flaxman; Frank Harris; First American Bank and Trust and Cobb Coin, Inc., Defendants.

Bankruptcy No. 86–02840–BKC–TCB.
Adv. No. 88–0512–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

Jan. 13, 1989.

Leslie Gern Cloyd, West Palm Beach, Fla., for plaintiff trustee Irving E. Gennet.

Theodore A. Jewell, Alley, Maass, Rogers, Lindsay & Chauncey, Palm Beach, Fla., for defendant First American Bank and Trust.

Arthur M. Wolff, Wolff & Gora, P.A., Ft. Lauderdale, Fla., for defendants Scott and Expeditions Unlimited, Inc.

Jeffrey H. Frank, Levine and Frank, P.A., Palm Beach Gardens, Fla., John D. Kallen, Badiak, Will & Kallen, North Miami, Fla., for Arthur Hartman.

Frank Fee, III, Fee, Bryan, Koblegard, Tel & Kenney, P.A., Ft. Pierce, Fla., for Frank A. Harris.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The trustee seeks determination under 28 U.S.C. § 157(b)(2)(B) and (K) of the validity, amount and priority of six competing claims against the debtor husband's claimed share of recovered Spanish treasure.[1] I will refer to him in this order as "the debtor". This core matter was tried November 29.

Two defendants, Harris and Cobb Coin, have failed to answer and a default judgment against any claim either might assert against the treasure was authorized at trial.

A third defendant, Flaxman, died shortly before this action was filed. No service was attempted upon her estate. Therefore her estate is not bound by this decision. At one time, Flaxman claimed an attorney's lien against the debtor's share of the treasure. If not otherwise resolved, that claim must be the subject of another proceeding.

I now conclude that an undivided 70% share of the treasure presently in the trustee's possession was owned by the defendant Hartman on the date of bankruptcy (September 15, 1986) and that it remains owned by him. That share never became a part of this bankruptcy estate under 11 U.S.C. § 541. The trustee owns the remaining undivided 30% share of the treasure.

Hartman's share as well as the trustee's share are each free and clear of any claim of any other party, other than the possible claim of Flaxman's estate against the trustee's share.

### Hartman's Title

On July 1, 1980, the debtor, who had participated with others in finding the treasure, contracted with Hartman to give him part of the debtor's share in return for Hartman's services in recovering the treasure. By amendment Hartman's share was ultimately fixed at 70%.

In 1984, the debtor filed suit (No. 84–885–CA–17–Kenney) in the State court for St. Lucie County, Florida, against Cobb Coin and a third party to determine the parties' respective interests in the treasure. Hartman intervened. A State court receiver was appointed to take possession of the treasure.

A summary judgment of the State court, entered August 28, 1986, upheld Hartman's contractual ownership of an undivided 70% of the treasure which was then in the State

---

1. The right, title and interest of the public, through the State of Florida, was determined and set apart at the outset. It is not in issue here.

receiver's custody, free and clear of any claim of the debtor or Cobb Coin or the third party.[2] That judgment was never appealed and has become final.

After this bankruptcy was filed, less than a month after the judgment, the State court receiver as custodian was directed to and did turn over the treasure to the bankruptcy trustee as required by § 543. (Ex. 1). The trustee, therefore, holds as custodian the identical res litigated in the State court. There is, therefore, no uncertainty as to the identity or location of "the treasure" which is in dispute here.

### The Claim of Scott and Expeditions

Defendant Scott and a corporation he controls, the defendant Expeditions Unlimited, Inc. (hereafter collectively "Scott"), claim a $200,000 first lien on the debtor's share of the treasure. He also disputes Hartman's entitlement to any part of the treasure. Both contentions are based upon the following events.

*The judgment.* On December 30, 1982, two years before the commencement of the State litigation, Scott obtained a $1.5 million judgment against the debtor in the District Court for this district (No. 80–6588–Civ–JAG) on his counterclaim against the debtor.[3]

*The settlement.* By a settlement agreement, approved by the District Court in November 1983, Scott's judgment was reduced to $200,000 and the debtor agreed to secure payment by executing a lien on his share of the treasure. The documents were never executed and no lien was ever perfected by recordation.

*The attempted intervention.* In March 1985, a year after the filing of the State court action described above, Scott attempted to intervene in that action as the

debtor's assignee. Though we are told by a magistrate that the motion was denied (Ex. K at 1–2), neither the State court's order nor the reason for denial is in this record. If there was error in that ruling, it was not appealed and has long since become binding on the parties.

*The attempted garnishment.* In April 1985, Scott served a federal writ of garnishment on the State court receiver and each party in the State court litigation. The writ sought garnishment of the debtor's share in the treasure to satisfy Scott's reduced $200,000 judgment. No answer was ever filed and no judgment on the writ was ever entered.[4]

*The federal appointment of a neutral custodian.* In March 1986 the District Court appointed a neutral custodian (an auctioneer) to hold the treasure. This was two years after the filing of the State court litigation and while the treasure remained in that court's custody through the State court receiver. There is no indication that the State court receiver was not a neutral custodian.

The treasure had never been within the possession or control of the District Court. Neither Hartman nor the State court receiver were parties to the federal litigation or to the stipulation between the debtor and Scott which apparently prompted this unusual order. There is no indication of any attempt to implement the March 1986 order.

The attempted garnishment and the appointment of a custodian are the *only* references to the treasure in the federal litigation. Though the federal litigation began four years before the State court litigation and both continued concurrently for two years before the State judgment, the Dis-

---

**2.** If the State court ever passed upon the parties' entitlement to the remaining 30% of the treasure, its ruling is not before this court.

**3.** This record does not show the basis for Scott's judgment.

**4.** Federal writs of garnishment follow State law. Rule 64, Fed.R.Civ.P. As was held in *Sunland Mortgage Corp. v. Lewis,* 515 So.2d 1337, 1339 (Fla.Dist.Ct.App.1987):

"Once a receiver is appointed for a business or person, as was done in this case, that entity loses the power to transfer its property subject to the receivership. *Third parties, as well, cannot obtain a valid transfer or effect a valid lien on the receivership property through filing suits and obtaining a judgment."* (Emphasis added).

trict Court never enjoined either the State court or any of the litigants or took any other action to interrupt the concurrent State litigation.[5]

I can only surmise that it was never brought to Judge Gonzalez' attention that the treasure was in the custodia legis of the State court and that at least three other parties, in addition to the two before him, claimed entitlement to the treasure. This inference is supported by the fact that no part of the district court record reflects these vital facts.

### Scott's Argument

■ Scott argues that the State court lacked jurisdiction, because the District Court found that the State court:

"was without subject-matter jurisdiction over the treasure because the treasure was under the jurisdiction of the United States Federal District Court." (CP 12 at 3).

I disagree. Judge Gonzalez did not make and could not have made any such finding. The res (the debtor's share of the treasure) was never within the possession of the District Court. The subject matter of the State court litigation (the contract between Hartman and the debtor) was never before the District Court. *Only* the State court has had jurisdiction of the res and the Hartman contract.

The federal litigation gave Scott and Expeditions an in personam judgment against the debtor, not the treasure and certainly not that portion of the treasure owned by Hartman through his 1980 contract.

Although the State court judgment may be attacked collaterally if void for lack of either subject matter or personal jurisdic-

tion, Scott has not carried his burden here of demonstrating either.

■ Scott's other argument is that he and Expeditions:

"possess a perfected lien on the treasure by virtue of the internal lien contained within the [District Court's] Final Judgment." (CP 12 at 2).

Again, I disagree. The "judgment" relied upon, the District Court's Order of November 29, 1983 (Ex. A, attachment), merely approved the settlement between the debtor and Scott in which the debtor agreed to:

"sign those documents necessary to perfect [a lien in favor of Scott and Expeditions, upon the debtor's entitlement of the treasure]." (Ex A, attachment).

No documents were ever signed, much less perfected by recordation or otherwise before the date of bankruptcy. "Internal" liens, so far as I know, do not exist. If Scott is claiming an equitable lien against the debtor's interest in the treasure by virtue of this Order, two things are clear: that secret lien is subject to Hartman's ownership of 70% of the treasure; and that lien is subject to the trustee's title to the remaining 30% of the treasure.

As of the date of bankruptcy, the trustee takes title to all interests of the debtor free of all unperfected liens. As stated in *In re General Coffee Corporation*, 828 F.2d 699, 704 (11th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988):

"Section 544(a), the 'strong-arm' provision of the Bankruptcy Code, permits a trustee to avoid secret liens against property in the debtor's possession. It grants a trustee the rights of an essentially ideal lienholder against property in which the debtor does not possess complete title."

---

5. As was held in *Southeastern Pipe Line Co. v. Powell*, 113 F.2d 434, 435 (5th Cir.1940):

"A fundamental principle requires that one who claims a right in or to property held by a receiver must submit his claim to the court." It is equally fundamental that once a court has jurisdiction over a particular res, no other court can proceed in rem with respect to the same res and courts with concurrent jurisdiction will exercise their discretion to defer to that court for the sake of comprehensive disposition of rights

in a particular piece of property. *Universal Marine Ins. Co., Ltd. v. Beacon Ins. Co.*, 768 F.2d 84 (4th Cir.1985) (it is irrelevant in which court litigation first began); *Levy v. Lewis*, 635 F.2d 960, 965–66 (2nd Cir.1980); *Federal Savings and Loan Insurance Corp. v. PSL Realty Co.*, 630 F.2d 515 (7th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981) (possession of receiver withdraws property from jurisdiction of all other courts); *Meter Maid Industries, Inc.*, 462 F.2d 436, 438 (5th Cir.1972).

In *General Coffee*, the Court recognized that a constructive trust survives the strong-arm powers of the trustee, but that an equitable lien, which it defined, does not. Scott neither asserts nor has a constructive trust.

### The Trustee's Claim

The trustee, supported by an unsecured creditor, has opposed the claims of Scott and Expeditions for essentially the same reasons I have rejected those claims.

■ The trustee opposes Hartman's claim on the ground that the State court judgment was entered within 90 days before bankruptcy and is, therefore, voidable under § 547(b) as a preference.

I disagree with the trustee with respect to Hartman's claim, because his argument begs the question. Section 547(b) permits the avoidance under certain circumstances of transfers of *property of the debtor.* The State court judgment did not transfer any property of the debtor. The judgment held that 70% of the treasure *did not belong to the debtor.*

The difference is crucial, because the debtor's transfer of his property interest was effected by his 1980 contract and its amendment, both of which occurred years before the bankruptcy. No court has ever held that a judgment determining a property interest is a voidable preference merely because the judgment was entered within the 90–day preference period.

■ The trustee's remaining argument is that the State court judgment gave Hartman a lien, "as the treasure is not divisible." This contention also lacks merit.

There is no reason to assume this treasure indivisible. The fact, if it be a fact, that it may be more valuable if sold as an intact collection rather than partitioned between the co-owners, does not make the State court judgment a lien or any other transfer. The judgment created no lien and transferred nothing.

### Conclusion

As is required by B.R. 9021(a), a separate judgment will be entered in accordance with this decision. Each party shall bear its own costs.

DONE and ORDERED.